UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
UNITED STATES OF AMERICA           )
                                   )
vs.                                )   Criminal Action
                                   )   No. 05-40005-FDS
NICHOLAS RHEAULT,                  )
DONALD E. WHITNEY, III,            )
          Defendants.              )
_____)

MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS

Defendant, Nicholas Rheault, hereby submits this memorandum in support of his motion to suppress.

**I.   FACTUAL BACKGROUND**

Mr. Rheault was arrested by Drug Enforcement Agency ("DEA") agents on February 1, 2005. The officers, led by agent Danny Genese, went to 124 Middle Street, Apt. 2, Leominster, MA with an arrest warrant for Mr. Rheault issued on that same day. Apartment 2 is but one of three located in a single house at 124 Middle Street. Each apartment is located on a different level, leased by different tenants, and completely separate from the other apartments.

The agents who arrested Mr. Rheault went to apartment 2 around 10:50 p.m. on that night. When they arrived, the officers did not find Mr. Rheault but instead found his roommate, William McManus. Mr. McManus gave the officers limited consent for them to search Apartment 2 in which he resided and over which he had authority. The Consent to Search form explicitly limits the area to which Mr. McManus consented to be searched to his apartment only. See Exhibit 1 (Consent to Search Form).

Nevertheless, despite this limited consent, and despite only having an arrest warrant for Mr.

Rheault, the agents continued to search the entire house. They expanded their search well beyond the areas limited by Mr. McManus' search to include the hallways and staircases. They eventually found Mr. Rheault crouched behind a large wooden furniture frame. The furniture was located a good distance from a washing machine at the end of the hallway–at least 5 to 7 feet from where Mr. Rheault was located, if not more. See U.S. Exhibit N-190. When the agents found Mr. Rheault, they walked by the washing machine which was then closed.

Along with Agent Genese, there were about four other officers who helped effectuate Mr. Rheault's arrest. They pointed their guns at Mr. Rheault and immediately placed him in handcuffs. Mr. Rheault did not make any furtive gestures, he did not resist, and he did not lunge for any area. In short, Mr. Rheault offered no indication that he posed a danger to the safety of any officer or that he had access to any area that might contain a weapon. Indeed, Mr. Rheault was significantly outnumbered by officers, in restraint, and fearful for his own safety after having had guns pointed at him. The agents escorted Mr. Rheault downstairs to Apartment 2. Mr. Rheault was downstairs for almost five minutes, speaking with the agents, when he heard an officer say that they had found a gun and some drugs.

## II.     LEGAL ARGUMENT

The agents who arrested Mr. Rheault unreasonably seized the gun and drugs in the washing machine. The seizure was unjustified under prevailing Fourth Amendment Doctrine.

### 1.     *The Evidence was Not in Plain View*

Under the plain view doctrine, officers may seize evidence in plain view if "their presence at the point of discovery" is lawful. U.S. v. Robles, 45 F.3d. 1, 18 (1st Cir. 1995); see Coolidge v. New Hampshire, 403 U.S. 443 (1971). In this case, however, officers had to physically lift the lid

of the washing machine to discover what was inside. As argued below, the officers did not have a right to open the washing machine–that is, their presence was not lawful. Therefore, the discovery of these items cannot be justified under the plain view doctrine.

    *2.    There was no Reasonable Basis to Conduct a Protective Sweep*

Upon lawfully arresting a suspect, officers are allowed to conduct a protective sweep of the surrounding areas in only narrow circumstances. Specifically, officers may search an area if they possess a reasonable belief "that the area swept harbored an individual posing a danger to the officer or others." Maryland v. Buie, 494 U.S. 325, 327 (1990), citing Michigan v. Long, 462 U.S. 1032, 1049-50 (1983); U.S. v. Paradis, 351 F.3d 21, 16-17 (1st Cir. 2003). Such a search is allowed to "protect the officer from harm." Buie, 494 U.S. at 333. It is limited, however, to a "cursory visual inspection of those places in which a person might be hiding." Id. at 327, 334 (emphasis added).

In the present case, it simply cannot be argued that a person could potentially be hiding in the washing machine, thereby allowing it to be searched under the guise of a protective sweep. Moreover, there was nothing in this situation which would give rise to reasonable suspicion that there was anyone hiding anywhere in the building who would pose a danger to the police. The officers had already searched the entire second floor apartment and had not found anyone who posed a threat, nor did they have a reason to suspect there was someone elsewhere who would pose a danger to them. Paradis, 351 F.3d at 17-19. Additionally, Mr. Rheault was already in custody and downstairs in Apartment 2 when they searched the washing machine. U.S. v. Noushfar, 140 F.3d 1244 (9th Cir. 1996) (Finding a protective sweep conducted a half hour after suspect had been taken into custody unreasonable). A protective sweep of any place in the entire house, let alone a washing machine, was not warranted absent more evidence that the officers' safety was at risk.

*3.    The Search of the Washing Machine was an Impermissible Search Incident to Arrest, as it was an Area Outside of Mr. Rheault's Immediate Control*

The officers did not have authority to search the washing machine, even as a search incident to arrest. Upon a lawful arrest, officers may search the person arrested "[a]nd the area into which an arrestee might reach in order to grab a weapon." Chimel v. California, 395 U.S. 752, 763 (1969). The area subjected to this search is very limited: it is the area "within his immediate control–construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Ibid. "The reasonableness of a warrantless search incident to arrest depends upon the facts and circumstances and the total atmosphere of the case. According to Chimel, those facts and circumstances must be viewed in light of established Fourth Amendment principles, and the only reasoned distinction is one between (1) search of the person arrested and the area within his reach, and (2) more extensive searches." U.S. v. Osorio, 877 F.Supp. 771, 777 ( D. Mass.1994), citing Chimel, at 752, 765-66.

In essence, there are two main factors in determining whether a search incident to arrest is lawful: 1) Where is it possible for the arrestee to reach? and 2) What is the probability that the arrestee will in fact attempt to gain access to any given area? See Wayne R. LeFave, Search and Seizure § 6.3(c) (4th ed. 2004). Several factors indicate that the officers exceeded the scope of Chimel in this case.

It was not possible for Mr. Rheault to reach the washing machine from where he was, either before or after he was arrested. In determining if an object is "conceivably accessible to the arrestee," a court assumes the arrestee "was neither an acrobat [nor] a Houdini." U.S. v. Abdul-Saboor, 85 F.3d 664, 669 (D.C. Cir. 1996). In the immediate case, the washing machine was a safe

distance from Mr. Rheault. <u>U.S. v. Hill</u>, 730 F.2d 1163 (8th Cir. 1984) (improper to search closed suitcase which was about five feet from suspect). No weapons had yet been found and the officers had no reason to be believe any were in the house. <u>U.S. v. Myers</u>, 208 F.3d 251, 267 (9th Cir. 2002). Mr. Rheault was handcuffed. <u>Ibid</u>; <u>U.S. v. Blue</u>, 78 F.3d 56 (2nd Cir. 1996). There were several officers standing between Mr. Rheault and the washing machine. <u>Blue</u>, 78 F.3d at 60; <u>Hill</u>, 730 F.2d at 1168; <u>U.S. v. Mapp</u>, 476 F.2d 67, 80 (2nd Cir. 1973). Lastly, the washing machine itself was closed, thereby making it more difficult to access. <u>Chimel</u>, 395 U.S. at 763; <u>U.S. v. Cruz Jimenez</u>, 894 F.2d 1, 7 (1st cir 1990), <u>quoting</u> <u>Chimel</u>, 395 U.S. at 763 ("There is no comparable justification . . . for searching through all the desk drawers or other closed or concealed areas in that room itself"); <u>Hill</u>, 730 F.2d at 1168; <u>Mapp</u>, 476 F.2d at 80.

Besides it not being possible for Mr Rheault to reach the washing machine, there was also very little probability that he would attempt to do so. Apart from the above factors, the search was conducted after Mr. Rheault had already been brought down to apartment 2. A search "can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." <u>Shipley v. U.S.</u>, 395 U.S. 818, 819 (1969), <u>quoting</u> <u>Stoner v. California</u>, 376 U.S. 483, 486 (1964). That is, there is a "temporal restriction" on the officers ability to act. <u>U.S. v. Edwards</u>, 242 F.3d 928, 937 (10th Cir. 2001); <u>U.S. v. Osorio</u>, 877 F.Supp. 71, 777-78 (D. Mass 1994). Here, the search was conducted after the circumstances which justify such a search had dissipated. The fact that Mr. Rheault had been taken downstairs eliminated any probability that he would reach into the washing machine and, further, eliminated any danger he posed to the officers with respect to any weapons in the area he was arrested.

III.   CONCLUSION

The officers had no authority to be in the hallway where they arrested Mr. Rheault, nor did they have authority to search the area around him. The items seized from the washing machine were obtained in violation of Mr. Rheault's rights under the Fourth Amendment. Accordingly, they should be suppressed.

Date:  7.14.05                                             Respectfully Submitted,

/s/ John G. Swomley
_____
John G. Swomley
BBO# 551450
Swomley and Associates
227 Lewis Wharf
Boston, MA 02110
Tel. (617) 227-9443