```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                             )
     v.                      )    CRIMINAL NO. 05-40005-FDS
                             )
NICHOLAS RHEAULT             )
```

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America, through the undersigned attorneys, files this response to Defendant Nicholas Rheault's Motion to Suppress. Defendant is charged with Conspiracy to distribute ecstasy, in violation of 21 U.S.C. § 846, Distribution of ecstasy and possession with intent to distribute, in violation of 21 U.S.C. § 841, and felon in possession of a firearm. He moves to suppress a 9 mm handgun seized from a washing machine at the time and place of his arrest.

This motion should be denied without a hearing. Defendant has failed to meet his burden of establishing a legitimate expectation of privacy in the area from which the gun was recovered. Accordingly, there was no search in a constitutional sense, and the seizure of the gun was lawful.

### FACTS[1]

On February 1, 2005, agents went to 124 Middle Street, Leominster, Massachusetts to arrest Defendant pursuant to an

---

[1] This statement of facts is based upon the affidavit of Special Agent David DiTullio, annexed hereto.

1

arrest warrant. An investigation showed that Rheault resided in apartment 2 at 124 Middle Street, a three story, multiple-family dwelling. Agents had received information that Rheault might be armed with a laser-sighted firearm.

In the evening of February 1, agents conducted surveillance of 124 Middle Street. Parked outside was a car agents had seen Rheault operating during the investigation. Agents also observed individuals on the third floor peeking from behind a closed curtain on the third floor to the street. In addition, an agent saw two females in a car across the street. They were looking up to the second and third floor windows and talking on a cellular telephone.

At 10:15 p.m., agents entered the common hallways of 124 Middle Street and approached the door to apartment 2. The door was ajar. The apartment was occupied by a male speaking on a cellular telephone. The male reported that Rheault was not present. As agents conducted a cursory search of the apartment, they heard noises coming from the common hallway above.

Agents ascended the stairs, going from the second floor apartment where Rheault resided to the third floor common hallway, without impediment. On the third floor landing, they observed an individual hiding behind a wood structure that appeared to be a bookcase. The bookcase was at the end of the common hallway, among other objects. The individual hiding was

identified as Rheault and he was arrested. As that was done, an agent saw a black digital scale on the floor area where Rheault had been hiding.

Agents then searched the hallway area where Rheault had been arrested. Approximately 5 to 7 feet away was a disabled washing machine. Inside it, an agent saw the butt of a gun and a magazine for the gun wrapped in a white t-shirt. The agents seized these items. The shirt contained not only the gun which defendant moves to suppress, and the magazine, but a plastic bag containing pills, later determined to be ecstasy, and powder later determined to be cocaine and LSD.

## ARGUMENT

### DEFENDANT HAS FAILED TO SHOW A LEGITIMATE EXPECTATION OF PRIVACY IN THE AREA SEARCHED

It is a fundamental principle of Fourth Amendment jurisprudence that a challenge to the constitutionality of a search depends upon a showing of a legitimate expectation of privacy in the place searched. See Rawlings v. Kentucky, 448 U.S. 98, 106 (1980); Rakas v. Illinois, 439 U.S. 128, 132, n.1 (1978) ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.")(citations omitted); United States v. Thornley, 707 F.3d 622, 624 (1st Cir. 1983).

The Court has adopted a two-part test for determining whether a reasonable expectation of privacy exists: whether the

3

individual has exhibited a subjective expectation of privacy; and second, whether such subjective expectation is one, viewed objectively, that society is prepared to recognize as reasonable. Id. *citing* United States v. Maryland, 442 U.S. 735 (1979); see Katz v. United States, 389 U.S. 346, 361 (1967)(Harlan, J. concurring)(articulating the two-step inquiry based on Court's prior decisions).

As to the first part of the test, a subjective expectation of privacy is demonstrated by actions taken to keep activities, objects or information private, such a closing the door of a telephone booth and paying to make a private call, as in Katz. Id. Here, Rheault can claim no subjective expectation of privacy in the common hallway or in the disabled washing machine that, among other objects, occupied the common hallway. Rheault did not take steps to keep the common hallway private, such as erecting a partition, routinely excluding others from the area or locking the washing machine. A Photograph of the common hallway, annexed hereto as Exhibit A, shows that the common hallway was a public area with exposed windows, apparently used to store unwanted, unused or unusable objects. See Ex. A. hereto. Indeed, the agents moved from the second floor apartment where Rheault resided to the third floor common hallway, without impediment. Similarly, the washing machine was disabled and exposed to anyone in the hallway - tenant, guest, invitee, etc.

4

Moreover, Rheault does not claim in his affidavit or papers that he had such an actual expectation of privacy in the hallway or washing machine, or that he took steps to keep objects and activities in the common hallway private. To the contrary, his papers describe 124 Middle Street as a multi-family dwelling comprised of three separate apartment on each of the three floors of the building, suggesting that the hallways were public spaces that facilitated access to and from the apartments. Under such circumstances, Rheault has not met his burden of establishing an actual expectation of privacy.

Rheault fares no better under the second part of the test; that is, society is not prepared to recognize as reasonable an expectation of privacy in a common area of an apartment building. To the contrary, it is settled that tenancy in an apartment building does not create a reasonable expectation of privacy in the common areas of such apartment building, such as the hallways. See United States v. Hawkins, 139 F.3d 29, 33 (1st Cir. 1998)("It is now beyond cavil in this circuit that a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building."); United States v. Garner, 338 F.3d 78, 80 (1st Cir. 2003)(defendant lacked privacy interest in hole in basement wall of apartment building from which drugs and gun seized); Thornley, 707 F.2d at 625 (failure to meet second part of test where storage area in which defendant kept automotive

records not locked, was readily accessible through a hole in partition, was used by others, and defendant did not prohibit access of others).

In addition to case law, as noted above, Rheault did not take steps to keep private objects in the common hallway or disabled washing machine which might change the society's refusal to recognize an expectation of privacy in public areas of an apartment building as reasonable. Rheault did not partition, lock, or exclude others from, the common hallway or the washing machine. Accordingly, he did not create an objective, justifiable expectation of privacy in these areas.

In the final analysis there was no search in the constitutional sense of the word because there was no invasion of Rheault's privacy. See Oliver v. United States, 446 U.S. 170, 177-78 (1984)(a search is a governmental invasion of a person's privacy). Rather, Rheault placed the gun, ammunition and drugs in an unprotected public area and the police acted lawfully in searching that area and seizing the contraband they discovered. See e.g. California v. Greenwood, 486 U.S. 35, 40-41 (1988) (police lawfully searched opaque bags of trash defendants left on curb for collection; no legitimate expectation of privacy in trash left on curb); Katz, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection."). For all there

6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL NO. 05-40005-FDS
)
NICHOLAS RHEAULT )

### AFFIDAVIT OF SPECIAL AGENT DITULLIO

I, David DiTullio, being duly sworn, do depose and say:

1. I am a Special Agent of the Drug Enforcement Administration ("DEA"), United States Department of Justice. I currently am assigned to the Mobile Enforcement Team.

2. I make this affidavit in support of the government's response to Defendant Rheault's motion to suppress a firearm seized at the time of Rheault's arrest. I base this affidavit on my participation in the case resulting in Rheault's arrest and on my conversations with other law enforcement officers involved in this investigation.

3. On February 1, 2005, agents went to 124 Middle Street, Leominster, Massachusetts to arrest Rheault pursuant to an arrest warrant. An investigation showed that Rheault resided in apartment 2 at 124 Middle Street, a three story, multiple-family dwelling. Agents had received information that Rheault might be armed with a laser-sighted firearm.

4. In the evening of February 1, agents conducted surveillance of 124 Middle Street. Parked outside was a car

1

agents had seen Rheault operating during the investigation. Agents also observed individuals on the third floor peeking from behind a closed curtain on the third floor to the street. In addition, an agent saw two females in a car across the street. They were looking up to the second and third floor windows and talking on a cellular telephone.

5. At approximately 10:15 p.m., agents entered the common hallways of 124 Middle Street and approached the door to Apartment 2. The door was ajar. The apartment was occupied by a male speaking on a cellular telephone. The male reported that Rheault was not present. As agents conducted a cursory search of the apartment, they heard noises coming from the common hallway above.

6. Agents ascended the stairs, going from the second floor apartment where Rheault resided to the third floor common hallway, without impediment. On the third floor landing, they observed an individual hiding behind a wood structure that appeared to be a bookcase. The bookcase was at the end of the common hallway, among other objects.

7. The individual hiding was identified as Rheault and he was arrested. As that was done, an agent saw a black digital scale on the floor area where Rheault had been hiding.

8. Agents then searched the hallway area where Rheault had been arrested. Approximately 5 to 7 feet away was a disabled

2

washing machine. Inside it, an agent saw the butt of a gun and a magazine for the gun wrapped in a white t-shirt. The agents seized these items. The shirt contained not only the gun and magazine, but a plastic bag containing pills, later determined to be ecstasy, and powder later determined to be cocaine and LSD.

9. Exhibit A hereto is a fair and accurate picture of how the third floor common hallway appeared on February 1, 2005 at the time of Rheault's arrest. The white object in the lower right hand corner of the photograph is the disabled washing machine.

DAVID DITULLIO
Special Agent
U.S. Drug Enforcement
Administration

Sworn to before me this
12th day of August, 2005

Notary Public

PAMELA ORLANDO
Notary Public
My Commission Expires
November 15, 2007

3

# EXHIBIT A

