UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal Action |
| | ) | No. 05-40005-FDS |
| NICHOLAS RHEAULT, | ) | |
| DONALD E. WHITNEY, III, | ) | |
| Defendants. | ) | |

REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

Defendant, Nicholas Rheault, hereby submits this reply to the government's response to his motion to suppress.

I. **FACTUAL BACKGROUND**

122-124 Middle Street has two entrances, one in the front and one in the back. The front entrance leads to a set of hallways and staircases distinct from the back entrance, which also leads to a set of hallways and staircases. The front hallways and staircases leads to two doors in each apartment; the back hallways and staircases lead to one door in each apartment. There is no access to the front hallways or staircases from the back ones and vice versa.

Normally, the back entrance is unlocked, and access to the back hallways and stairways is generally unfettered. The front entrance, however, is always locked. Only tenants with keys can gain access. The public is generally excluded from these spaces. Indeed, tenants would sometimes keep items such as furniture in these hallways, with the expectation that these items would be undisturbed by the public. It is here, in the third floor front hallway, that the agents found Mr. Rheault and conducted a search of the closed washing machine.

II. **LEGAL ARGUMENT**

The government classifies the area searched as a "common" hallway. However, the government cannot merely claim that a space is public by labeling it as such. The officers here entered a space that was normally unaccessible to the public and searched areas that were not within plain view. These areas were distinct in kind from the kinds of places courts have previously held public.

For example, in United States v. Hawkins, 139 F.3d 29 (1st Cir. 1998), the court upheld the actions of officers in going to an open basement storage facility. There we no evidence that the area where the officers entered was locked or at all inaccessible to the public. Moreover, the storage areas themselves were surrounded by chicken wire, "the interiors of which were visible from outside the enclosures." Id. at 31. Most importantly, the agents did not actually enter the storage spaces themselves, but merely used the information they gathered from observation in support of a search warrant to enter the storage facilities. Id. at 32. Likewise, the other cases cited by the government present situations in which the government accessed unlocked areas. See United States v. Garner, 338 F.3d 78 (1st Cir. 2003); United States v. Thornley, 707 F.2d 622 (1st Cir. 1983).

The difference is significant and the issue is one of first impression in this circuit, at least regarding the effect of the area being locked. See United States v. Miravalles, 280 F.3d 1328 (11th Cir. 2002) (giving a general overview of how other circuits, including the First circuit, view this issue). As Miravalles noted, "tenants have little control over those areas, which are available for the use of other tenants, friends and visitors of other tenants, the landlord, delivery people, repair workers, sales people, postal carriers and the like." Id. at 1332, citing United States v. Cruz Pagan, 537 F.2d 554, 558 (1st Cir. 1976). The court went on to note that "the more units in the apartment building, the larger the number of tenants and visitors, workers, delivery people, and others who will

have regular access to the common areas, and the less reasonable any expectation of privacy. Whether the door to the building is locked is another relevant consideration." Ibid.

The sixth circuit has addressed this issue, and provides persuasive reasoning:

> Whether the officer entered forcibly through a landlady's window or by guile through a normally locked entrance door, there can be no difference in the tenant's subjective expectation of privacy, and no difference in the degree of privacy that the Fourth Amendment protects. A tenant expects other tenants and invited guests to enter in the common areas of the building, but he does not expect trespassers.

United States v. Carriger, 541 F.2d 545, 551 (6th Cir. 1976). The reasoning of Carriger was recently upheld by the sixth circuit:

> We believe that the holding of Carriger is applicable here. The officers in the instant matter entered a locked building without utilizing the proper procedure and, therefore, the ensuing search was violative of defendants' subjective expectation of privacy . . . It is the authority to enter, not the manner of entry, that provides the legality for the officers' conduct; the most casual reading of Carriger reveals that any entry into a locked apartment building without permission, exigency or a warrant is prohibited.

United States v. Heath, 259 F.3d 522, 534 (6th Cir. 2001).

In the immediate case, therefore, the area in which the agents eventually found Mr. Rheault and the disputed evidence was indeed an area in which Mr. Rheault and every other tenant in that building had an expectation of privacy. It is telling that the officers do not state how it is they gained access to the building or the hallway. They had a arrest warrant for Mr. Rheault, but there is no indication how they entered the building. Moreover, the arrest4 warrant, at best, allowed the government to search apartment 2 for Mr. Rheault, but it did not grant permission to search any other area of that house. And there is no indication that anyone gave the government consent to go to the third floor hallway. Therefore, the government agents were exactly the types of persons which the individuals in the building would not expect to enter that area of the house.

3

**III.     CONCLUSION**

The government's contention that Mr. Rheault had not expectation of privacy in the area searched is a red herring. The issue was not addressed because Mr. Rheault did not believe it was in contention. All the relevant factors indicate that the tenants would not expect the public to intrude into the front hallway. There were only three apartment buildings, so therefore the number of persons with access was limited. Moreover, access to that hallway was closed to the public because only tenants with keys could enter. Were the search conducted in the back hallway, then the argument would be different. However, given that it took place where it did, by agents with no authority or permission to enter, the fruits of the illegal search must be suppressed.

Date:   August 29, 2005                          Respectfully Submitted,


                                                 /s/ John G. Swomley
                                                 _____
                                                 John G. Swomley
                                                 BBO# 551450
                                                 Swomley and Associates
                                                 227 Lewis Wharf
                                                 Boston, MA 02110
                                                 Tel. (617) 227-9443

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
UNITED STATES OF AMERICA       )
                               )
vs.                            )     Criminal Action
                               )     No. 05-40005-FDS
NICHOLAS RHEAULT,              )
DONALD E. WHITNEY, III,        )
           Defendants.         )
_____)
```

AFFIDAVIT OF NICHOLAS RHEAULT IN SUPPORT OF REPLY TO THE
GOVERNMENT'S RESPONSE TO HIS MOTION TO SUPPRESS

I, Nicholas Rheault, do hereby swear the following is true to the best of my knowledge:

1)   I am the defendant in the above entitled matter.

2)   122-124 Middle Street has two entrances, one in the front and one in the back.

3)   The front entrance leads to a set of hallways and staircases distinct from the back entrance, which also leads to a set of hallways and staircases. The front hallways and staircases leads to two doors in each apartment; the back hallways and staircases lead to one door in each apartment.

4)   There is no access to the front hallways or staircases from the back ones and vice versa.

5)   Normally, the back entrance is unlocked, and access to the back hallways and stairways is generally unfettered.

6)   The front entrance, however, is always locked. Only tenants with keys can gain access. The public is generally excluded from these spaces. Indeed, tenants would sometimes use this as a storage location keep items such as furniture in these hallways, with the expectation that these items would be undisturbed by the public.

7) When the agents arrested me, I was in the third floor front hallway.

Date:   August 29, 2005

/s/ Nicholas Rheault
_____
Nicholas Rheault