UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
          v.                )    Cr. No. 05-40005-FDS
                            )
NICHOLAS RHEAULT            )

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney, and David Hennessy, Assistant U.S. Attorney, hereby submit this memorandum in connection with the sentencing of Defendant Nicholas Rheault, scheduled for June 7, 2006, and to address matters raised by Rheault in his sentencing memorandum.  The government recommends a sentence at the bottom of the applicable guideline range of 151-188 months to be followed by five years' supervised release.

**Guideline Calculation**

United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006)(affirming the sentencing procedure of this Session of the District Court) held that the guideline range is the starting point for assessing sentences imposed after Booker.  In determining the starting point, we address Defendant's challenges to the Guideline Calculation in the PSR.

First, Defendant is a career offender.  His only objection in this regard is procedural: that convictions should be proved to a jury beyond a reasonable doubt.  As Defendant concedes, United States v. Almendarez-Torres, 523 U.S. 224 (1998)(upholding the authority of judges to determine criminal history) is good

law and controlling.  The base offense level ("BOL") for career offenders whose current offense carries a statutory maximum of 20 years, as is the case here, is 32.  With credit for acceptance of responsibility, the range is 151-188 months.  See PSR ¶135.

**Two-Level Gun Enhancement**

While academic in light of the career offender guideline, Defendant also objects to an enhancement for the presence of a firearm connected to the drug offenses.  A two-level increase in offense level is mandated "[i]f a dangerous weapon (including a firearm) was possessed" in the course of a drug offense.  U.S.S.G. §2D1.1(b)(1).  The enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  Id. Comm. n.3.  A certain nexus between the weapon and the offense must be shown in order for the enhancement to lie.  United States v. McDonald, 121 F.3d 7, 10 (1st Cir. 1997).  To establish this nexus, the government "need only prove that the defendant possessed the weapon during the currency of the offense, not necessarily that he actually used it in perpetrating the crime or that he intended to do so."  Id. When the weapon's location makes it readily available to protect the participants during the commission of the offense, or the drugs and cash involved therein, the evidence is sufficient.  Id. Once the government demonstrates the possession of a gun, the burden is on the defendant to show that the connection between the gun and the drug crime was "clearly improbable."  United

States v. May, 343 F.3d 1, 7 (1st Cir. 2003).

Here, the adjustment properly lies. Defendant possessed the gun; the gun was found in a disabled washing machine just seven feet from where Defendant was hiding when he was arrested, and Defendant pleaded guilty to possessing it. Moreover, the nexus between the gun and the drug offenses is met: with the gun were, among other things, 44 ecstasy pills, the drug that is the subject of each of the drug charges in the indictment. In addition, Whitney (the co-defendant) had warned agents that Defendant possessed a gun with a laser sight. Far from being an uncorroborated statement, agents found exactly what Whitney said Defendant possessed. Lastly, Defendant's roommate, William McManus, also told agents that Defendant possessed and carried a black handgun with a laser sight at the time Defendant was involved in supplying ecstasy. See DEA Six Report Ex. A hereto.

**Felon in Possession Guideline and Enhancement**

Defendant objects to the calculation of the BOL for Count 5, charging him with being a felon in possession of a firearm. Under 2K2.1(a)(5), the BOL is 24 where, as here, a defendant has been previously convicted of two controlled substance offenses.[1]

In addition, Defendant faces a four-level increase because he possessed the firearm "in connection with another felony." U.S.S.G. §2K2.1(b)(5). The phrase "in connection with" is to be "interpreted broadly." United States v. Thompson, 32 F.3d 1, 7

---

[1]We believe the PSR erroneously assigns a BOL of 26.

(1st Cir. 1994). "[T]here is no question that where a defendant's possession of a firearm . . . has the potential to aid or facilitate the commission of another offense," possession is "in connection with" that offense. Id. at 6, 7. Thus, in United States v. Peterson, 233 F.3d 101, 111 (1st Cir. 2000), the enhancement applied because of the physical proximity of guns to drugs.

Here, the showing for this enhancement is met. The gun was with drugs Defendant distributed. Moreover, the gun had the potential to aid and facilitate the distribution of drugs by protecting Defendant and the drugs he distributed. Thus, the enhancement should apply.

**Criminal History Calculation**

Defendant objects to the PSR's calculation of his criminal history insofar as it fails to treat two juvenile convictions as related, and therefore as one sentence for purposes of calculating criminal history. See U.S.S.G. §4A1.2(a)(2). This objection is without merit. In United States v. Correa, 114 F.3d 314 (1st Cir. 1997), the Court of Appeals rejected a similar argument and expressly held:

> at least in respect to offenses that are temporally and
> factually distinct (that is, offenses which occurred on
> different dates and which did not arise out of the same
> course of conduct), charges based thereon should not be
> regarded as having been consolidated (and, therefore,
> "related") unless the original sentencing court entered
> an actual order of consolidation or there is some other
> persuasive indicium of formal consolidation apparent on
> the face of the record which is sufficient to indicate
> that the offenses have some relationship to one another

beyond the sheer fortuity that sentence was imposed by the same judge at the same time.

Id. at 317.

Applying this holding, the juvenile offenses here, though disposed of on the same date by the same court, are not "related."  It is clear the convictions do not possess a common antecedent: they occurred on separate dates, in separate places and involved factually distinct conduct.  See PSR ¶¶74-75.  Secondly, it is clear that after the first offense, Defendant was taken to the police station and questioned.  See PSR ¶74.  Even if not an "arrest," there is an intervening interaction with police.  Lastly, and perhaps dispositively, there is no order of consolidation.  Thus these offenses are not related.

Defendant also argues that his juvenile offenses should each receive only one criminal history point.  We disagree.  In commenting on sentences of imprisonment, the Guideline Commission noted that "criminal history points are based on the sentence pronounced, not the length of time actually served."  U.S.S.G. §4A1.2, n.2.  Here, the sentence for each of the juvenile adjudication was commitment to DYS for a period of 18 months.  Thus, each adjudication warrants two criminal history points.

### 3553(a) Factors

Defendant argues that the circumstances of his criminal conduct and his history and characteristics warrant a sentence below the guideline range for career offenders.  The government addresses some arguments briefly below.

Defendant and his expert place much of the motivation for Defendant's conduct on drug dependency.  For instance, Dr. Rogoff opined that "as with many addicts, his illegal activity in selling drugs was in the service of getting the money to maintain his habit," Def. Ex. 1 at 2; and Defendant claims that "his driving addiction pushed him into more problematic conduct." Def. Memo. at 12.  However, the facts do not indicate that Defendant was destitute or lacked money to buy drugs, and hence committed crimes because he was desperate to support his habit. When arrested on February 1, 2005, Defendant was the registered owner of 2003 Infiniti Sedan.  See Photograph Ex. B hereto. While he may have been obligated to make monthly payments, this would suggest his drug activity was to support not merely drug use, but a certain life style.  Similarly, when agents arrested Defendant, they recovered $3,540 ($560 from a jacket in Defendant's closet, $300 from his person, and $2,680 concealed above a ceiling).  See DEA Six Report, Ex. C hereto, p.5.  Other evidence, including a letter of reference, suggests that Defendant, though mostly unemployed, had ready access to cash. See Letter of Joseph Dufour.  This is at odds with the claim that Defendant was historically desperate to support his habit and committed crimes for that purpose.

Defendant also seeks a lower sentence because the offenses did not involve violence.  While true, the argument cuts the facts too finely.  Defendant carried and possessed a gun with a

laser sight at the time he engaged in dealing ecstasy.  The potential for violence, particularly given Defendant's drug use and criminal history, was significant.  Moreover, Defendant's criminal history included breaking and entering a residence, a crime which, by definition is a crime of violence.  See U.S.S.G.§4B1.2(a).  Lastly, Defendant's pretrial detention shows a number of incidents involving threats of violence and aggressive physical conduct.  See Disciplinary Reports, Ex. D hereto.  In sum, the absence of violence in the crimes at issue here cannot be taken as proof that Defendant does not have any history of violent conduct, or dismissal of sentencing as a means to protect the public from further crimes of Defendant.

Defendant also advances a number of arguments for a shorter sentence.  One of them is that a longer sentence is counter-productive because as Defendant becomes comfortable in jail, jail will lose its specific deterrent value.  Whether or not this is valid, it overlooks the fact that to this point, the alternatives to incarceration that Defendant is now suggesting -- probation, a social and familial network of support – have failed.  Despite coming from a caring home, despite probationary sentences, despite the best efforts of DYS, Defendant in a short time has accumulated a significant criminal history.  He has demonstrated that non-incarcerative sentences are ineffective at modifying his unlawful conduct.  Because of this history, a longer term of imprisonment is appropriate.  A longer term of imprisonment will

also allow Defendant access to much-needed counseling and care.

Finally, Defendant argues that a sentence pursuant to the Career Offender Guideline would create an unwarranted sentencing disparity between himself and his co-defendant Whitney, under 18 U.S.C. §3553(a)(6).  However, as the plain language of that provision shows, its objective is to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  Defendant and Whitney do not have similar records; Defendant is a Career Offender.  In addition, their conduct is not as similar as Defendant suggests.  Beyond participating jointly with Whitney in distributing ecstasy, Defendant possessed a gun, after having been convicted of a felony.  Defendant also engaged in additional drug conduct: the agreement to provide 200 ecstasy pills immediately before his arrest, and possession of ecstasy recovered at the time of Defendant's arrest.  See PSR ¶¶34, 36-38.  Finally, as a legal matter, the aim of Section 3553(a)(6) was a national uniformity in sentencing, and not necessarily uniformity between two co-defendants.  United States v. Saez, 444 F.3d 15, 18-19 (1st Cir. 2006).  Indeed, to avoid an unwarranted sentencing disparity among defendants who are Career Offenders and who have engaged in similar conduct, Defendant should be sentenced to 151 months incarceration.

## CONCLUSION

The government respectfully submits that Defendant is a Career Offender and, as such, should be sentenced to 151 months' incarceration to be followed by five years' supervised release.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ David Hennessy
David Hennessy
Assistant U.S. Attorney

ss. Worcester

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by U.S. Mail upon the below-named counsel on this 31st day of May, 2006.

/s/ David Hennessy
DAVID HENNESSY
Assistant U.S. Attorney

John G. Swomley, Esq.

**U.S. Department of Justice**
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code MET-100 | 2. Cross File | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|
| 5. By: S/A David DiTullio At: Boston FD-Group 2 | ☐ ☐ ☐ ☐ | | 6. File Title | |
| 7. ☐ Closed ☐ Requested Action Completed   ☐ Action Requested By: | | | 8. Date Prepared 03/09/05 | |

9. Other Officers: S/A Dan Genese

10. Report Re: Interview of William MCMANUS on 03-09-05 in Leominster, MA.

**EXHIBIT A**

### DETAILS

1. On 03-09-2005, S/A's DiTullio and Genese interviewed William MCMANUS relative to his knowledge of Ex# N-186, a High-Point 9mm luger semi-automatic handgun seized from Nicholas RHEAULT at 124 Middle St., #2, Leominster, MA on 02-01-05. (Reference is made to the written statement of William McManus on 02-01-05 as witnessed by S/A Genese and TFA Connolly). (Reference is also made to the DEA-6 by S/A DiTullio entitled Arrest of Nicholas RHEAULT on 02-01-05 in Leominster, MA).

2. In sum and substance, MCMANUS told S/A's DiTullio and Genese that he observed RHEAULT to be in possession of a black handgun with a laser type sight during the winter of 2004, approximately one (1) month prior to RHEAULT'S arrest. MCMANUS stated that on one (1) occasion during this time period, he traveled in RHEAULT'S black Infiniti G35 to pick up a friend. MCMANUS stated that he observed the black handgun with the laser type sight tucked in the waistband of RHEAULT'S pants. MCMANUS stated that he specifically viewed the handgun as RHEAULT adjusted the handgun in his waistband as he exited the vehicle. After MCMANUS gave a detailed description of the handgun, MCMANUS positively identified the gun in two (2) photographs of Ex# N-186 which S/A's DiTullio and Genese provided to MCMANUS. MCMANUS specifically identified the laser type sight which was located on the bottom area of the barrel of the firearm.

| 11. Distribution: Division Boston FD-Intellignece | 12. Signature (Agent)   S/A David M. DiTullio | 13. Date 3/9/05 |
|---|---|---|
| District | 14. Approved (Name and Title)   Richard W. Guerard   Group Supervisor Group 2 | 15. Date 3-10-05 |
| Other   SARI | | |

DEA Form - 6
(Jul. 1996)

3 - Originating Office

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| | **REPORT OF INVESTIGATION** | 1. File No. | 2. G-DEP Identifier |
|---|---|---|---|
| | *(Continuation)* | 3. File Title | |
| 4. Page 2 of 2 | | | |
| 5. Program Code MET-100 | | 6. Date Prepared 03/09/05 | |

3. In sum and substance, MCMANUS stated that he asked RHEAULT why he was in possession of a gun. RHEAULT stated that he had a gun "because of what he does". At this time, the interview of MCMANUS was terminated.


**INDEXING**

1. RHEAULT, Nicholas –

**DEA SENSITIVE**
Drug Enforcement Administration

**3 - Originating Office**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.



Black Infiniti, 2003, G35
Registered to Nicholas Rheault



12/15/2004 1:14 PM

, **Department of Justice**
₃ Enforcement Administration

| **REPORT OF INVESTIGATION** | | | | Page 1 of 7 | |
|---|---|---|---|---|---|
| 1. Program Code MET-100 | 2. Cross File | Related Files | 3. File No. | | 4. G-DEP Identifier YCH1C |
| 5. By: S/A David DiTullio At: Boston FD-Group 2 | ☐ ☐ ☐ ☐ | | 6. File Title | | **EXHIBIT** |
| 7. ☐ Closed  ☐ Requested Action Completed    ☐ Action Requested By: | ☐ | | 8. Date Prepared 02/03/05 | | |
| 9. Other Officers: G/S Guerard,S/A's Sawyer,Story,Desmond,Sarabia,Genese,Karamourtopoulos,TFA's O'Leary,Connolly,Gilbert,Deming,Siciliano,Pappas,Martinez,Fitzpatrick & Ptl Malatos. | | | | | |
| 10. Report Re: Arrest of Nicholas RHEAULT on 02-01-05 in Leominster, MA. Consensual Search at 124 Middle St #2. Acq. of Ex#'s 73,78,79,80,81,N-185,N-186,N-187,N-188 and N-190. | | | | | |

## SYNOPSIS

The above noted agents and officers arrested Nicholas RHEAULT on February 01, 2005 at approximately 10:20 PM. RHEAULT was arrested at 124 Middle St, Leominster, MA pursuant to Federal Arrest Warrant# 05-1642-CBS signed by U.S. Magistrate Judge Charles B. Swartwood, III on 02-01-2005.

## DETAILS

1. (Reference is made to the DEA-6 by S/A Karamourtopoulos entitled Surveillance of Nicholas RHEAULT on 02-01-05 in Leominster, MA). On 02-01-2005, agents/officers formulated a plan for the arrest of Nicholas RHEAULT at his residence at 124 Middle St., #2, Leominster, MA., pursuant to Federal Arrest Warrant #05-1642-CBS signed by U.S. Magistrate Judge Charles B. Swartwood, III on 02-01-05. At this time, agents/officers planned to lure RHEAULT out of his residence by orchestrating a tow truck to remove RHEAULT's 2003 Infiniti G35 (MA Reg 34XJ12) from the driveway of the residence because of information previously received that RHEAULT would possibly be armed with a laser sighted firearm inside of his residence (Reference is made to the DEA-6 by S/A Genese entitled Arrest of Donald WHITNEY and post arrest statements on 02-01-05).

2. While the attempt to lure RHEUALT out was deemed unsuccessful, agents/officers planned to make a "high risk" entry into the residence in order to arrest RHEAULT. (Reference S/A

| 11. Distribution: Division  Boston FD-Intelligence | 12. Signature (Agent)  S/A David M. DiTullio | 13. Date 02/09/05 |
|---|---|---|
| District | 14. Approved (Name and Title) Richard W. Guerard Group Supervisor, Group 2 | 15. Date 2-14-05 |
| Other    SARI | | |

DEA Form    - 6
(Jul. 1996)
        dmdarr.doc
1 - Prosecutor

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| **REPORT OF INVESTIGATION** *(Continuation)* | 1. File No. ▮▮▮▮ | 2. G-DEP Identifier ▮▮▮▮ |
|---|---|---|
| | 3. File Title ▮▮▮▮ | |

| 4. Page  2  of  7 | |
|---|---|
| 5. Program Code MET-100 | 6. Date Prepared 02/03/05 |

Karamourtopoulos' surveillance ROI which indicates that RHEAULT was seen entering the residence earlier) Also at this time, G/S Guerard, S/A DiTullio, S/A Karamourtopoulos and S/A Sarabia observed individuals located on the 3rd floor of 124 Middle St., "peeking" through the closed curtains, observing agents/officers located on the street. S/A Genese also observed two (2) unidentified females parked across the street from 124 Middle St., one of which was talking on a cellular phone while looking up towards the second and third floors of 124 Middle St.

3. At approximately 10:15 p.m., agents/officers approached the doorway of 124 Middle St., #2, Leominster, MA. Upon approaching the doorway, S/A Story observed that the door of apartment #2 was open. At this time, agents/officers announced their presence and were let in the residence by an individual later identified as Alex ARCHAMBAULT who at this time was ordered by S/A Story to terminate his cellular phone which he was talking on. Upon obeying S/A Story's commands, ARCHAMBAULT stated that he resided at this residence. ARCHAMBAULT was temporarily placed in safety restraints while agents/officers secured the premises. In sum and substance, ARCHAMBAULT told S/A GENESE that RHEAULT was not at the residence at this time and that he was home alone. Upon clearing the residence, agents/officers determined that ARCHAMBAULT was the sole occupant of the residence at this time. Also at this time, agents/officers heard unknown individuals scampering and creating significant commotion in the front common stairwell which led to the 3rd floor of 124 Middle St. At this time, S/A Sawyer and TFA Deming entered the front common stairwell leading to the 3rd floor. Upon approaching the common stairwell area of the 3rd floor, TFA Deming and S/A Sawyer observed an individual hiding behind a large wood structure located in the corner of the 3rd floor common stairwell area. TFA Deming and S/A Sawyer identified themselves, subsequently identified Nicholas RHEAULT as the individual hiding behind the wood structure and placed him under arrest.

4. Upon placing RHEAULT into custody, S/A Sawyer observed a black digital scale (Ex# N-187) containing a white powdery residue located on the floor area where RHEAULT was hiding. Upon conducting a search of the immediate area for contraband/weapons, TFA Deming observed an

**DEA SENSITIVE**
**Drug Enforcement Administration**

**1 - Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| **REPORT OF INVESTIGATION**<br>*(Continuation)* | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title | |

| 4.<br>**Page   3   of   7** | |
|---|---|
| 5. Program Code<br>  MET-100 | 6. Date Prepared<br>  02/03/05 |

inoperable washing machine located approximately 5-7 feet from the
area in which RHEAULT was located. Upon inspection of the washing
machine, TFA Deming observed the butt-end of a handgun along with a
magazine containing ammunition (Ex# N-186) partially wrapped in a
white t-shirt. Upon further inspection of the handgun and t-shirt,
TFA Deming observed a clear plastic bag (containing Ex#'s 73, 78, 79,
80 and 81) contained with the t-shirt and handgun. (NOTE: TFA Deming
and S/A Sawyer photographed the handgun and plastic package partially
wrapped in the white t-shirt prior to removal of said items from the
washing machine).

5. Upon given the opportunity to cooperate with agents/officers, RHEAULT
declined while making a series of false statements to agents/officers
concerning the handgun which was located in the washing machine a
short distance from where he was located. RHEAULT also stated that he
used to deal drugs, but did not any longer and that he did not know
why he was being arrested. RHEAULT further stated that he had "a
couple thousand dollars located in his bedroom" and gave S/A Story
and G/S Guerard verbal consent to locate the money. RHEAULT told S/A
Story to look underneath his mattress and in the dresser for the
money, which yielded negative results. RHEAULT further told S/A Story
and G/S Guerard that the money was "somewhere in the bedroom". Upon
further inspection of the bedroom, S/A Story located $560 U.S.
Currency in a jacket pocket located in the closet of the bedroom, as
witnessed by G/S Guerard.

6. At this time, ARCHAMBAULT told TFA O'Leary and TFA Pappas that he
frequently observed RHEAULT conducting suspicious activity in the
bathroom suspended ceiling tiles. While S/A Story was speaking to
RHEAULT, the leaseholder, William MCMANUS, signed a DEA Form-88 (Ex#
N-188) Consent to Search the premesis of 124 Middle St., #2 as
witnessed by S/A Genese and TFA Connolly. Upon inspection of the
bathroom ceiling suspended ceiling tiles, TFA O'Leary located $2,680
U.S. Currency stashed above the suspended ceiling tiles (NOTE: The
$2,680 was subsequently seized and processed with other seized
currencies as referenced with Ex# N-185).

---

**DEA SENSITIVE**
**Drug Enforcement Administration**

**1 - Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| | 1. File No. ▓▓▓▓▓▓▓▓ | 2. G-DEP Identifier ▓▓▓▓▓▓ |
|---|---|---|
| **REPORT OF INVESTIGATION**  *(Continuation)* | 3. File Title ▓▓▓▓▓▓▓▓ | |
| 4.  Page  4  of  7 | | |
| 5. Program Code  MET-100 | 6. Date Prepared  02/03/05 | |

7. RHEAULT was transported to the Leominster P.D. for the booking process on 02-01-05 and subsequently transported to U.S. District Court Worcester for his initial appearance on 02-02-2005.

## DESCRIPTION AND CUSTODY OF DRUG EVIDENCE

On 2-1-05, Ex.#73 was seized by TFO Deming from Nicholas RHEAULT in Leominster, MA. TFO Deming maintained care/custody of said ex.until handing it over to S/A DiTullio who then handed it to S/A Sarabia who sealed it and transported said ex. to NEFD/DEC Vault for safekeeping. On 2-3-05, S/A Sarabia removed said ex.from the NEFD/DEC Vault, processed, weighed, field tested said ex.(w/positive results) before re-submitting it to the NEFD/DEC Vault for further safekeeping.  On a later date, S/A Sarabia removed said ex. from the vault and mailed it via RMRRR to NERL for further analysis/safekeeping.

On 2-1-05, Ex.#78 was seized by TFO Deming from Nicholas RHEAULT in Leominster, MA. TFO Deming maintained care/custody of said ex.until handing it over to S/A DiTullio who then handed it to S/A Sarabia who sealed it and transported said ex. to NEFD/DEC Vault for safekeeping. On 2-3-05, S/A Sarabia removed said ex.from the NEFD/DEC Vault, processed, weighed, field tested said ex.(w/inconclusive results) before re-submitting it to the NEFD/DEC Vault for further safekeeping.  On a later date, S/A Sarabia removed said ex. from the vault and mailed it via RMRRR to NERL for further analysis/safekeeping.(Originally contained w/Ex.#73, in plastic bag)

On 2-1-05, Ex.#79 was seized by TFO Deming from Nicholas RHEAULT in Leominster, MA. TFO Deming maintained care/custody of said ex.until handing it over to S/A DiTullio who then handed it to S/A Sarabia who sealed it and transported said ex. to NEFD/DEC Vault for safekeeping. On 2-3-05, S/A Sarabia removed said ex.from the NEFD/DEC Vault, processed, weighed, field tested said ex.(w/positive results) before re-submitting it to the NEFD/DEC Vault for further safekeeping.  On a later date, S/A Sarabia removed said ex. from the vault and mailed it via RMRRR to NERL for further analysis/safekeeping.(Originally contained w/Ex.#73, in plastic bag)

DEA Form    - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

**1 - Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title | |
| 4.<br>Page  5  of  7 | | |
| 5. Program Code<br>MET-100 | 6. Date Prepared<br>02/03/05 | |

On 2-1-05,Ex.#80 was seized by TFO Deming from Nicholas RHEAULT in
Leominster, MA. TFO Deming maintained care/custody of said ex.until
handing it over to S/A DiTullio who then handed it to S/A Sarabia who
sealed it and transported said ex. to NEFD/DEC Vault for safekeeping. On
2-3-05, S/A Sarabia removed said ex.from the NEFD/DEC Vault, processed
and weighed said ex. before re-submitting it to the NEFD/DEC Vault for
further safekeeping.  On a later date, S/A Sarabia removed said ex. from
the vault and mailed it via RMRRR to NERL for further
analysis/safekeeping.(Originally contained w/Ex.#73, in plastic bag)

On 2-1-05,Ex.#81 was seized by TFO Deming from Nicholas RHEAULT in
Leominster, MA. TFO Deming maintained care/custody of said ex.until
handing it over to S/A DiTullio who then handed it to S/A Sarabia who
sealed it and transported said ex. to NEFD/DEC Vault for safekeeping. On
2-3-05, S/A Sarabia removed said ex.from the NEFD/DEC Vault, processed
and weighed said ex. before re-submitting it to the NEFD/DEC Vault for
further safekeeping.  On a later date, S/A Sarabia removed said ex. from
the vault and mailed it via RMRRR to NERL for further
analysis/safekeeping.(Originally contained w/Ex.#73, in plastic bag)

**DESCRIPTION AND CUSTODY OF NON-DRUG EVIDENCE**

Ex# N-185 is described as $3,540 U.S. Currency. N-185 was seized as a
result of the consensual search of 124 Middle St., #2, Leominster, MA on
02-01-05. N-185 was located by S/A Story ($560 USC in jacket pocket
located in RHEAULT'S bedroom), TFA O'Leary ($2,680 USC in suspended
ceiling tile of bathroom and TFA Siciliano ($300 USC on person of
RHEAULT during booking process). Ex# N-185 was subsequently relinquished
to S/A Sarabia for safekeeping at the NEFD. On 02-02-05 S/A
Karamourtopoulos took custody of the exhibit for safekeeping and on 02-
03-05, S/A Karamourtopoulos processed the exhibit into a deposit
document transferred to the USMS.

Exhibit N-186, described as 1 Hi-Point 9mm luger pistol w/laser sight,
model# C9, serial# P155489 w/ 1 magazine containing five (5) 9mm luger
bullets. N-186 was seized on 2/1/05 by TFA Chuck Deming in an inoperable
washing machine located on the 3rd floor common hallway/landing at 124
Middle Street, Leominster, MA. TFA Deming transferred the exhibit to S/A

DEA Form    - 6a
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

**1 - Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.



**U.S. Department of Justice**
Drug Enforcement Administration

| REPORT OF INVESTIGATION<br>*(Continuation)* | 1. File No. ▮▮▮▮▮▮▮▮ |  2. G-DEP Identifier ▮▮▮▮ |
| | 3. File Title ▮▮▮▮▮▮▮▮ | |

| 4.<br>Page  6  of  7 | |
| 5. Program Code<br>MET-100 | 6. Date Prepared<br>02/03/05 |

Dave DiTullio, who transferred the exhibit to S/A Ed Sarabia. On 2/1/05 S/A Sarabia transferred the exhibit to the Boston DO and secured the exhibit. On 2/2/05 S/A Sarabia transferred the exhibit to S/A Paul Karamourtopoulos who processed the exhibit into evidence and maintained custody of the exhibit until it was transferred for analysis by the BATF/Worcester.

Exhibit N-187, described as 1 Micro-Tech model MTECH 120 Digital Scale. N-187 was seized on 2/1/05 by S/A Kevin Sawyer on the floor of the 3rd floor common hallway/landing at 124 Middle Street, Leominster, MA. S/A Sawyer transferred the exhibit to S/A Dave DiTullio, who transferred the exhibit to S/A Ed Sarabia. S/A Sarabia transferred the exhibit to S/A Paul Karamourtopoulos who processed the exhibit into evidence and maintained custody of the exhibit until it was transferred to the Boston Non-Drug Evidence Custodian.

N-188 described as 1 DEA Form-88 Consent to search form for the residence of 124 Middle St #2, Leominster, MA. N-188 was obtained by S/A Genese, as witnessed by TFA Connolly from William MCMANUS on 02-01-05 at 124 Middle St #2, Leominster, MA. On 02-01-05, S/A Genese relinquished custody of N-188 to S/A DiTullio who subsequently processed the exhibit. On a later date, S/A DiTullio relinquished custody to S/A Karamourtopoulos who submitted the exhibit to the NEFD non-drug evidence custodian for safekeeping.

Exhibit N-190, described as 1 CD-RW, contains photographs taken at 124 Middle Street, 3rd Floor, Leominster, MA on 2/1/05 by TFA Chuck Deming subsequent to the arrest of Nicholas RHEAULT. TFA Deming transferred the exhibit to S/A Paul Karamourtopoulos who processed the exhibit into evidence and maintained custody of the exhibit until it was transferred to the Boston Non-Drug Evidence Custodian.

**DEA SENSITIVE**
**Drug Enforcement Administration**

**1 - Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| | | | |
|---|---|---|---|
| **REPORT OF INVESTIGATION** <br> *(Continuation)* | 1. File No. <br> ████████ | | 2. G-DEP Identifier <br> ████████ |
| | 3. File Title <br> ████████ | | |
| 4. <br> Page   7   of   7 | | | |
| 5. Program Code <br>   MET-100 | 6. Date Prepared <br>   02/03/05 | | |

**INDEXING**

1. RHEAULT, Nicholas – ████████████████████
   Arrested 02-01-05 pursuant to the execution of a federal arrest
   warrant for conspiracy to distribute ecstasy in Leominster, MA.

2. WHITNEY, Donald – ████████████████████
   Arrested 02-01-05 pursuant to the execution of a federal arrest
   warrant for conspiracy to distribute ecstasy in Leominster, MA.

3. ARCHAMBAULT, Alex – ████████████████████
   Present at 124 Middle St #2, Leominster, MA during execution of
   federal arrest warrant for RHEAULT on 02-01-05.

4. MCMANUS, William – ████████████████████
   Present at 124 Middle St #2, Leominster, MA during execution of
   federal arrest warrant for RHEAULT on 02-01-05.

**DEA Form     - 6a**
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**1 - Prosecutor**

8-9

## OLD W. WYATT DETENTION FACILITY
### DISCIPLINARY REPORT

Report No. **S-353**

**PART I. REPORT**

DETAINEE NAME: Rehrault Nicholas

BOOKING NUMBER: 60478-038   DATE & TIME OF INCIDENT: 7-29-05 8:55   PLACE OF INCIDENT: Delta

DETAINEE HOUSING UNIT: Delta 9   DISCIPLINARY OFFENSES CHARGED: Refused to lockin ① Refusing an Order ② Conduct with ① C-8 ② C-6

SUMMARY OF INCIDENT:

On July 29 2005 At Approximately 8:55pm dettinee Rehrault Nicholas refused to lockin. Detainee Rehrault then Aggressively walked over to my desk, while scaring at me and took a box of gloves off the desk. He threw them on the floor stomping and spitting on them.

SIGNATURE OF ISSUING EMPLOYEE: F. Tirriso

REPORT FILED DATE & TIME: 7-29-05 11:00pm

EMPLOYEE NAME AND TITLE PRINTED: F. Tirriso  officer

REPORT SERVED TO DETAINEE BY: Sgt. McCauley

DATE SERVED: 7/29/05   TIME SERVED: 11:00pm

Detainee placed on Administrative Detention pending Disciplinary Hearing:  ☑ Yes  ☐ No   Current Housing Assignment: B-22

**PART II. INFORMAL SANCTIONS**

☐ 8 HOURS EXTRA DUTY   ☐ 24 HOUR LOCKDOWN  FROM:          TO:        ☐ 48 HOUR LOCKDOWN  FROM:          TO:

DETAINEE CHOOSES TO WAIVE HIS/HER RIGHT TO A DISCIPLINARY HEARING AND ACCEPTS A NON DISCIPLINE INFORMAL SANCTION. DETAINEE ACKNOWLEDGES THAT AN INFORMAL SANCTION DOES NOT BECOME PART OF THEIR PERMANENT RECORD AND THEREFORE IS NOT SUBJECT TO AN APPEAL.

Detainee Signature:          Date:          Supervisor Signature:          Date:

**PART III. DISCIPLINARY HEARING**

DETAINEE HAS BEEN INFORMED IN WRITING THAT THE DISCIPLINARY HEARING WILL BE HELD IN ___ HOURS BY:   SIGNATURE:            DATE & TIME:

DETAINEE CHOOSES TO WAIVE THE RIGHT TO A 24 HOUR HEARING NOTICE:  SIGNATURE:          DATE & TIME:

(signature) CAPT.

HEARING OFFICER/COMMITTEE MEMBER #1 NAME & TITLE: CAPT. BOTELHO   COMMITTEE MEMBER #2 NAME & TITLE: SGT. McNulty   COMMITTEE MEMBER #3 NAME & TITLE: C/O HAYNES

IS THE DETAINEE PRESENT BEFORE THE HEARING COMMITTEE:  ☐ YES  ☐ NO (IF NOT PRESENT ATTACH WAIVER/REFUSAL TO APPEAR)

STAFF MEMBER WITNESSING REFUSAL:          SIGNATURE:          PRINT:

DETAINEE WAS ADVISED OF HIS/HER RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE FACILITY'S DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

I HAVE BEEN ADVISED OF THE ABOVE RIGHTS: Nick Rehrault   ON DATE/TIME: 8/9/05

STAFF ASSISTANCE REQUESTED:  ☐ YES  ☑ NO   STAFF NAME & TITLE IF REQUESTED:

WITNESS REQUESTED:  ☐ YES  ☑ NO   WITNESS NAME(S):

DETAINEE'S PLEA:
CHARGE #1: C6  ☐ NOT GUILTY  ☐ GUILTY  ☑ GUILTY WITH EXPLANATION
CHARGE #2: C6  ☐ NOT GUILTY  ☐ GUILTY  ☐ GUILTY WITH EXPLANATION
CHARGE #3: C8  ☐ NOT GUILTY  ☐ GUILTY  ☐ GUILTY WITH EXPLANATION

DETAINEE SIGNATURE: Nick Rehrault

SUMMARY OF TESTIMONY:

DT states he was on phone w/ family having an emotional conversation when officer kept telling him to "get off phone". After a few minutes of this officer caused to have unit phones turned off.

HEARING OFFICER/COMMITTEE CONCLUSION: Guilty on own admission. Staff on shift also state DLT was emotional while on phone.

CHARGE #1: C6  ☐ NOT GUILTY  ☑ GUILTY
15 DAYS DISCIPLINARY SEGREGATION
___ DAYS SUSPENDED FOR ___ MONTHS

CHARGE #2: C6  ☐ NOT GUILTY  ☐ GUILTY
___ DAYS DISCIPLINARY SEGREGATION   DISMISSED
___ DAYS SUSPENDED FOR ___ MONTHS

CHARGE #3: C8  ☐ NOT GUILTY  ☑ GUILTY
___ DAYS DISCIPLINARY SEGREGATION
5 DAYS SUSPENDED FOR 3 MONTHS

I HAVE BEEN ADVISED OF THE FINDINGS OF THE DISCIPLINARY HEARING AND THAT I HAVE THE RIGHT TO APPEAL THESE FINDINGS IN WRITING TO THE WARDEN WITHIN A PERIOD OF FIVE DAYS.

DETAINEE SIGNATURE: Nick Rehrault

(signature) Capt.

DATE & TIME: 8/9  2:00 pm

# DONALD W. WYATT DETENTION FACILITY
## DISCIPLINARY REPORT

Report No. **S-373**

**PART I. REPORT**

DETAINEE NAME: Rheault, Nicholas

BOOKING NUMBER: 80478-038

DATE & TIME OF INCIDENT: 8/10/05  210p

PLACE OF INCIDENT: E-POD

DETAINEE HOUSING UNIT: E POD

DISCIPLINARY OFFENSE(S) CHARGED: Refusing a housing assignment

OFFENSE CODE(S): C-R

SUMMARY OF INCIDENT:

On 8/10/05 at approximately 210p. Detainee Rheault was reassigned to E-POD. Detainee Rheault was assigned to F12E (Boat). Detainee Rheault refused to go onto a boat inside of a cell. Detainee Rheault was given another direction to F12E. Detainee Rheault refused to go on a boat. Detainee Rheault was then removed to Seg. F-1. END of Rept.

SIGNATURE OF ISSUING EMPLOYEE: [signature]

REPORT FILED DATE & TIME: 8/10/05  220p

EMPLOYEE NAME AND TITLE PRINTED: C. McCurry     Sgt.

REPORT SERVED TO DETAINEE BY: [signature]

DATE SERVED: 8/10/05

TIME SERVED: 230Ph

Detainee placed on Administrative Detention pending Disciplinary Hearing:   ☒ Yes   ☐ No

Current Housing Assignment: F-5

**PART II. INFORMAL SANCTIONS**

☐ 8 HOURS EXTRA DUTY   ☐ 24 HOUR LOCKDOWN   FROM:___ TO:___   ☐ 48 HOUR LOCKDOWN   FROM:___ TO:___

DETAINEE CHOOSES TO WAIVE HIS/HER RIGHT TO A DISCIPLINARY HEARING AND ACCEPTS A NON DISCIPLINE INFORMAL SANCTION. DETAINEE ACKNOWLEDGES THAT AN INFORMAL SANCTION DOES NOT BECOME PART OF THEIR PERMANENT RECORD AND THEREFORE IS NOT SUBJECT TO AN APPEAL.

Detainee Signature:___ Date:___   Supervisor Signature:___ Date:___

**PART III. DISCIPLINARY HEARING**

DETAINEE HAS BEEN INFORMED IN WRITING THAT THE DISCIPLINARY HEARING WILL BE HELD IN 24 HOURS BY:

SIGNATURE: [signature]   DATE & TIME: 8/11/05 230p

DETAINEE CHOOSES TO WAIVE THE RIGHT TO A 24 HOUR HEARING NOTICE:

SIGNATURE: Nick Rheault   DATE & TIME: 8/18/05 6:55

HEARING OFFICER/COMMITTEE MEMBER #1 NAME & TITLE: Sgt. Nucivskey

COMMITTEE MEMBER #2 NAME & TITLE: June Culton

COMMITTEE MEMBER #3 NAME & TITLE:

IS THE DETAINEE PRESENT/BEFORE THE HEARING COMMITTEE:  ☒ YES  ☐ NO (IF NOT PRESENT ATTACH WAIVER/REFUSAL TO APPEAR)

STAFF MEMBER WITNESSING REFUSAL:   SIGNATURE: N/A   PRINT: N/A

DETAINEE WAS ADVISED OF HIS/HER RIGHT TO REMAIN SILENT; YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE FACILITY'S DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

I HAVE BEEN ADVISED OF THE ABOVE RIGHTS: Nick Rheault   ON DATE/TIME: 8/18/05

STAFF ASSISTANCE REQUESTED:  ☐ YES  ☒ NO   STAFF NAME & TITLE IF REQUESTED: N/A

WITNESS REQUESTED:  ☐ YES  ☒ NO   WITNESS NAME(S): N/A

DETAINEE'S PLEA:
CHARGE #1: C-R   ☐ NOT GUILTY   ☐ GUILTY   ☐ GUILTY WITH EXPLANATION
CHARGE #2: N/A   ☐ NOT GUILTY   ☐ GUILTY   ☐ GUILTY WITH EXPLANATION
CHARGE #3: N/A   ☐ NOT GUILTY   ☐ GUILTY   ☐ GUILTY WITH EXPLANATION

DETAINEE SIGNATURE: X

SUMMARY OF TESTIMONY: — when moved from B-Pod. I was told I would not be put on a boat.

HEARING OFFICER/ COMMITTEE CONCLUSION: — Detainee Rheault will receive the 15 days Disciplinary Segregation days for the C-R charge. Detainee was told he would be going to F-13 on a bunk. He refused that housing assignment after.

CHARGE #1: C-R   ☐ NOT GUILTY   ☒ GUILTY
(15) DAYS DISCIPLINARY SEGREGATION
___ DAYS SUSPENDED FOR ___ MONTHS

CHARGE #2: 0   ☐ NOT GUILTY   ☐ GUILTY
___ DAYS DISCIPLINARY SEGREGATION
___ DAYS SUSPENDED FOR ___ MONTHS

CHARGE #3:   ☐ NOT GUILTY   ☐ GUILTY
___ DAYS DISCIPLINARY SEGREGATION
___ DAYS SUSPENDED FOR ___ MONTHS

I HAVE BEEN ADVISED OF THE FINDINGS OF THE DISCIPLINARY HEARING AND THAT I HAVE THE RIGHT TO APPEAL THESE FINDINGS IN WRITING TO THE WARDEN WITHIN A PERIOD OF FIVE DAYS.

DETAINEE SIGNATURE: X Nick Rheault   DATE & TIME: 8/18/05

[signature] Sgt. M. Nucivskey   DATE & TIME: 8/18/05

## WYATT DETENTION FACILITY
## DISCIPLINARY REPORT

**PART I. REPORT**

Report No. 5-700

DETAINEE NAME: *Rheault, Nicholas*

BOOKING NUMBER: 80478-038

DATE & TIME OF INCIDENT: 8-19-05 747 PM

PLACE OF INCIDENT: F5

DETAINEE HOUSING UNIT: F-5

DISCIPLINARY OFFENSE(S) CHARGED: C-6 CONDUCT WHICH DISRUPTS C-9 FAILURE TO FOLLOW SANITARY

OFFENSE CODE(S): C-6, C-9

SUMMARY OF INCIDENT: On August 19, 2005 at approximately 747 pm, I officer Bautista was posted in control and observed detainee Rheault in F5 throwing out water from his cell door. Shift commander was notified Lt. Samos. IA End of statement. IA

SIGNATURE OF ISSUING EMPLOYEE: *RBautista*

REPORT FILED DATE & TIME: 8-19-05 11:00 PM

EMPLOYEE NAME AND TITLE PRINTED: OFFICER BAUTISTA

REPORT SERVED TO DETAINEE BY: Lt. D. Samos

DATE SERVED: 8-20-05

TIME SERVED: 9:00 p

Detainee placed on Administrative Detention pending Disciplinary Hearing: ☐ Yes ☒ No

Current Housing Assignment: F-5

**PART II. INFORMAL SANCTIONS**

☐ 8 HOURS EXTRA DUTY    ☐ 24 HOUR LOCKDOWN   FROM:    TO:    ☐ 48 HOUR LOCKDOWN   FROM:   TO:

DETAINEE CHOOSES TO WAIVE HIS/HER RIGHT TO A DISCIPLINARY HEARING AND ACCEPTS A NON DISCIPLINE INFORMAL SANCTION. DETAINEE ACKNOWLEDGES THAT AN INFORMAL SANCTION DOES NOT BECOME PART OF THEIR PERMANENT RECORD AND THEREFORE IS NOT SUBJECT TO AN APPEAL.

Detainee Signature:    Date:    Supervisor Signature:    Date:

**PART III. DISCIPLINARY HEARING**

DETAINEE HAS BEEN INFORMED IN WRITING THAT THE DISCIPLINARY HEARING WILL BE HELD IN 24 HOURS BY:

SIGNATURE:    DATE & TIME: 8/20/05

DETAINEE CHOOSES TO WAIVE THE RIGHT TO A 24 HOUR HEARING NOTICE.

SIGNATURE:    DATE & TIME:

HEARING OFFICER/COMMITTEE MEMBER #1 NAME & TITLE: Sgt. C. McNally

COMMITTEE MEMBER #2 NAME & TITLE: C/O MNR

COMMITTEE MEMBER #3 NAME & TITLE: C/O McGown

IS THE DETAINEE PRESENT BEFORE THE HEARING COMMITTEE: ☒ YES ☐ NO (IF NOT PRESENT ATTACH WAIVER/REFUSAL TO APPEAR)

STAFF MEMBER WITNESSING REFUSAL:   SIGNATURE: *Nick Rheault*   PRINT:

DETAINEE WAS ADVISED OF HIS/HER RIGHT TO REMAIN SILENT. YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE FACILITY'S DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

I HAVE BEEN ADVISED OF THE ABOVE RIGHTS:    ON DATE/TIME: 8/20/05

STAFF ASSISTANCE REQUESTED: ☐ YES ☒ NO   STAFF NAME & TITLE IF REQUESTED:

WITNESS REQUESTED: ☐ YES ☒ NO   WITNESS NAME(S):

DETAINEE'S PLEA:
CHARGE #1: C-6 ☒ NOT GUILTY ☐ GUILTY ☐ GUILTY WITH EXPLANATION
CHARGE #2: C-9 ☒ NOT GUILTY ☐ GUILTY ☐ GUILTY WITH EXPLANATION
CHARGE #3: ___ ☐ NOT GUILTY ☐ GUILTY ☐ GUILTY WITH EXPLANATION

DETAINEE SIGNATURE: *Nick Rheault*

SUMMARY OF TESTIMONY: Detainee stated that he had water coming into his cell and he was just pushing water out that was coming in.

HEARING OFFICER/COMMITTEE CONCLUSION: Detainee Rheault is found Not Guilty due to inconclusive evidence. The act of D/T flooding wasn't physically evidence.

CHARGE #1: C-6 ☒ NOT GUILTY ☐ GUILTY
___ DAYS DISCIPLINARY SEGREGATION
___ DAYS SUSPENDED FOR ___ MONTHS

CHARGE #2: C-9 ☒ NOT GUILTY ☐ GUILTY
___ DAYS DISCIPLINARY SEGREGATION
___ DAYS SUSPENDED FOR ___ MONTHS

CHARGE #3: ___ ☐ NOT GUILTY ☐ GUILTY
___ DAYS DISCIPLINARY SEGREGATION
___ DAYS SUSPENDED FOR ___ MONTHS

I HAVE BEEN ADVISED OF THE FINDINGS OF THE DISCIPLINARY HEARING AND THAT I HAVE THE RIGHT TO APPEAL THESE FINDINGS IN WRITING TO THE WARDEN WITHIN A PERIOD OF FIVE DAYS.

DETAINEE SIGNATURE: *Nick Rheault*   DATE & TIME: 8/20/05  9:45 a

HEARING OFFICER SIGNATURE:   DATE & TIME: 8/20/05  9:45 a

DOC - D W. WYATT DETENTION FACILITY
DISCIPLINARY REPORT

Report No. 6-108

**PART I. REPORT**

DETAINEE NAME: Rheault, Nicholas

BOOKING NUMBER: 80478-038

DATE & TIME OF INCIDENT: 3-17-06 12:20pm

PLACE OF INCIDENT: Bravo pod

DETAINEE HOUSING UNIT: B-07

DISCIPLINARY OFFENSE(S) CHARGED: Refusing a Housing Assignment

OFFENSE CODE(S): C-8

SUMMARY OF INCIDENT:

ON March 17, 2006 at approximately 12:20pm I Officer Petzenti directed Detainee Rheault, Nicholas #80478-038 to move to D-Pod. Detainee Rheault refused to move I then gave detainee Rheault a direct order to move to D-Pod. Detainee Rheault refused my order. Detainee Rheault was then escorted to the HSU single cell on lockdown. /// end of report ///

SIGNATURE OF ISSUING EMPLOYEE: A. Petzenti

REPORT FILED DATE & TIME: 3-17-06 1:00pm

EMPLOYEE NAME AND TITLE PRINTED: Officer A. Petzenti

REPORT SERVED TO DETAINEE BY: Captain C. Colrun

DATE SERVED: 3/18/06

TIME SERVED: 1030 AM

Detainee placed on Administrative Detention pending Disciplinary Hearing: ☒ Yes  ☐ No

Current Housing Assignment: C-4

**PART II. INFORMAL SANCTIONS**

☐ 8 HOURS EXTRA DUTY   ☐ 24 HOUR LOCKDOWN FROM:____ TO:____   ☐ 48 HOUR LOCKDOWN FROM:____

DETAINEE CHOOSES TO WAIVE HIS/HER RIGHT TO A DISCIPLINARY HEARING AND ACCEPTS A NON DISCIPLINE INFORMAL SANCTION. DETAINEE ACKNOWLEDGES THAT AN INFORMAL SANCTION DOES NOT BECOME PART OF THEIR PERMANENT RECORD AND THEREFORE IS NOT SUBJECT TO AN APPEAL.

Detainee Signature:____  Date:____  Supervisor Signature:____  Date:____

**PART III. DISCIPLINARY HEARING**

DETAINEE HAS BEEN INFORMED IN WRITING THAT THE DISCIPLINARY HEARING WILL BE HELD IN 24 HOURS BY:

SIGNATURE: Captain C. Colrun

DATE & TIME: 3/23/06 1070

DETAINEE CHOOSES TO WAIVE THE RIGHT TO A 24 HOUR HEARING NOTICE:

SIGNATURE:____  DATE & TIME:____

HEARING OFFICER/COMMITTEE MEMBER #1 NAME & TITLE:

COMMITTEE MEMBER #2 NAME & TITLE:

COMMITTEE MEMBER #3 NAME & TITLE:

IS THE DETAINEE PRESENT BEFORE THE HEARING COMMITTEE? ☒ YES ☐ NO (IF NOT PRESENT ATTACH WAIVER/REFUSAL TO APPEAR)

STAFF MEMBER WITNESSING REFUSAL:____  SIGNATURE:____  PRINT:____

DETAINEE WAS ADVISED OF HIS/HER RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE FACILITY'S DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

I HAVE BEEN ADVISED OF THE ABOVE RIGHTS: X Nick Rheault   ON DATE/TIME: 3/22/06 8:15pm

STAFF ASSISTANCE REQUESTED: ☐ YES ☒ NO   STAFF NAME & TITLE (IF REQUESTED):____

WITNESS REQUESTED: ☐ YES ☒ NO   WITNESS NAME(S):____

DETAINEE'S PLEA:
CHARGE #1: C8  ☐ NOT GUILTY ☒ GUILTY ☐ GUILTY WITH EXPLANATION
CHARGE #2:____  ☐ NOT GUILTY ☐ GUILTY ☐ GUILTY WITH EXPLANATION
CHARGE #3:____  ☐ NOT GUILTY ☐ GUILTY ☐ GUILTY WITH EXPLANATION

DETAINEE SIGNATURE X Nick Rheault

SUMMARY OF TESTIMONY: Nt plead guilty

HEARING OFFICER/ COMMITTEE CONCLUSION: Guilty. To be released 3-31-06

CHARGE #1: C8  ☐ NOT GUILTY ☒ GUILTY
15 DAYS DISCIPLINARY SEGREGATION 3/3/06
____ DAYS SUSPENDED FOR ____ MONTHS

CHARGE #2:____  ☐ NOT GUILTY ☐ GUILTY
____ DAYS DISCIPLINARY SEGREGATION
____ DAYS SUSPENDED FOR ____ MONTHS

CHARGE #3:____  ☐ NOT GUILTY ☐ GUILTY
____ DAYS DISCIPLINARY SEGREGATION
____ DAYS SUSPENDED FOR ____ MONTHS

I HAVE BEEN ADVISED OF THE FINDINGS OF THE DISCIPLINARY HEARING AND THAT I HAVE THE RIGHT TO APPEAL THESE FINDINGS IN WRITING TO THE WARDEN WITHIN A PERIOD OF FIVE DAYS.

DETAINEE SIGNATURE: X Nick Rheault

DATE & TIME: 3/22/06 8:19p

DONALD W. WYATT DETENTION FACILITY
**DISCIPLINARY REPORT**

Report No. 6-103

**PART I. REPORT**

| DETAINEE NAME: RHEAULT NICHOLAS | BOOKING NUMBER: 8047B-03B | DATE & TIME OF INCIDENT: 3/17/06 12:39pm | PLACE OF INCIDENT: HSU SINGLE WARD |

DETAINEE HOUSING UNIT: B7

DISCIPLINARY OFFENSE(S) CHARGES: DISOBEYING ORDER, THREATENING STAFF

OFFENSE SERVED: CB, B1

SUMMARY OF INCIDENT:
ON MARCH 17 2006 AT APPROXIMATELY 12:39 pm DETAINEE RHEAULT NICHOLAS REFUSED AN ORDER TO GET OFF THE BED IN THE SINGLE WARD IN HSU, DURING THIS TIME DETAINEE RHEAULT WAS ALSO USING PROFANITIES TOWARDS ME, STATING THAT I WAS A PUNK AND THAT HE HAD A "BURNER" FOR ME. DETAINEE RHEAULT PUSHED MY HAND AWAY AS I WAS ORDERING HIM TO GET OFF THE BED THEREFORE HE WAS RESTRAINED.

END OF STATEMENT

| SIGNATURE OF ISSUING EMPLOYEE: | REPORT FILED DATE & TIME: 3/17/06  8:10pm | EMPLOYEE NAME AND TITLE PRINTED: CK CLOUD  OFFICER |
| REPORT SERVED TO DETAINEE BY: Captain C Colon | | DATE SERVED: 3/18/06 | TIME SERVED: 10:35 am |

Detainee placed on Administrative Detention pending Disciplinary Hearing: ☒ Yes  ☐ No     Current Housing Assignment: F-4

**PART II. INFORMAL SANCTIONS**

☐ 8 HOURS EXTRA DUTY   ☐ 24 HOUR LOCKDOWN  FROM: ___ TO: ___   ☐ 48 HOUR LOCKDOWN FROM: ___ TO: ___
DETAINEE CHOOSES TO WAIVE HIS/HER RIGHT TO A DISCIPLINARY HEARING AND ACCEPTS A NON DISCIPLINE INFORMAL SANCTION. DETAINEE ACKNOWLEDGES THAT AN INFORMAL SANCTION DOES NOT BECOME PART OF THEIR PERMANENT RECORD AND THEREFORE IS NOT SUBJECT TO AN APPEAL.

| Detainee Signature: | Date: | Supervisor Signature: | Date: |

**PART III. DISCIPLINARY HEARING**

DETAINEE HAS BEEN INFORMED IN WRITING THAT THE DISCIPLINARY HEARING WILL BE HELD IN 24 HOURS BY:

SIGNATURE: Captain C Colon

DETAINEE CHOOSES TO WAIVE THE RIGHT TO A 24 HOUR HEARING NOTICE.

| SIGNATURE: | DATE & TIME |
| DATE & TIME: 3/18/06 10:35am | |

HEARING OFFICER/COMMITTEE MEMBER #1 NAME & TITLE: | COMMITTEE MEMBER #2 NAME & TITLE: | COMMITTEE MEMBER #3 NAME & TITLE:

IS THE DETAINEE PRESENT BEFORE THE HEARING COMMITTEE: ☐ YES ☐ NO (IF NOT PRESENT ATTACH WAIVER/REFUSAL TO APPEAR)

STAFF MEMBER WITNESSING REFUSAL: ___ SIGNATURE: ___ PRINT: ___

DETAINEE WAS ADVISED OF HIS/HER RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE FACILITY'S DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

I HAVE BEEN ADVISED OF THE ABOVE RIGHTS: X Nick Rheault    ON DATE/TIME: 3.22.06   8:13pm

STAFF ASSISTANCE REQUESTED: ☐ YES ☒ NO   STAFF NAME & TITLE IF REQUESTED: ___

WITNESS REQUESTED: ☐ YES ☒ NO   WITNESS NAME(S): ___

| DETAINEE'S PLEA: | CHARGE #1: B1  ☒ NOT GUILTY ☐ GUILTY ☐ GUILTY WITH EXPLANATION | DETAINEE SIGNATURE: X Nick Rheault |
| | CHARGE #2: CB  ☒ NOT GUILTY ☐ GUILTY ☐ GUILTY WITH EXPLANATION | |
| | CHARGE #3: ☐ NOT GUILTY ☐ GUILTY ☐ GUILTY WITH EXPLANATION | |

SUMMARY OF TESTIMONY: D/T claims he and the Officer had a mutual verbal confrontation, exchanging profanities to each other. D/T admits to standing on bed, but claims he was never ordered to get down from bunk. D/T claims he was poked in face by Officer three times and he swatted his hand away. He claims he was grabbed and slammed against the wall.

HEARING OFFICER/ COMMITTEE CONCLUSION: Guilty: D/T will be released on 4.10.06

| CHARGE #1: B1 ☒ NOT GUILTY ☐ GUILTY | CHARGE #2: CB ☐ NOT GUILTY ☒ GUILTY | CHARGE #3: ___ ☐ NOT GUILTY ☐ GUILTY |
| ___ DAYS DISCIPLINARY SEGREGATION | 10 DAYS DISCIPLINARY SEGREGATION 4.10.06 | ___ DAYS DISCIPLINARY SEGREGATION |
| ___ DAYS SUSPENDED FOR ___ MONTHS | 5 DAYS SUSPENDED FOR 3 MONTHS | ___ DAYS SUSPENDED FOR ___ MONTHS |

I HAVE BEEN ADVISED OF THE FINDINGS OF THE DISCIPLINARY HEARING AND THAT I HAVE THE RIGHT TO APPEAL THESE FINDINGS IN WRITING TO THE WARDEN WITHIN A PERIOD OF FIVE DAYS.

X Nick Rheault
DETAINEE SIGNATURE

DATE & TIME: 3/22/06  8:22 am

DONALD W. WYATT DETENTION FACILITY
DISCIPLINARY REPORT

6-126

Report No. **06-99**

**PART I. REPORT**

DETAINEE NAME: Nicholas Rheault

BOOKING NUMBER: 80478-038

DATE & TIME OF INCIDENT: 3/17/06 10:45am

PLACE OF INCIDENT: HSU

DETAINEE HOUSING UNIT: F-4

DISCIPLINARY OFFENSES CHARGED: Assaulting any Person, Threatening Another, Providing False

OFFENSE CODE(S): A-6 B-1 D-6

SUMMARY OF INCIDENT: Based on the investigation conducted by this office the following disciplinary offenses have been (charged #) detainee Nicholas Rheault. While standing on the metal bunk in HSU detainee Rheault did slap away Officer Cloud hand 3 times as Officer Cloud ordered him to step down from the Bunk. While being escorted to HSU & once in HSU single cell room Detainee Rheault threatened Officer Cloud several times telling him he had a bussnes (gun) for him when he got out. Detainee Rheault disproved the investigation with false statements as related to his injuries/actions.

SIGNATURE OF ISSUING EMPLOYEE: Ronald Letourneau

REPORT FILED DATE & TIME: March 28, 2006

EMPLOYEE NAME AND TITLE PRINTED: Ronald Letourneau Investigator

REPORTED TO DETAINEE BY: Captain C. Cobuca

DATE SERVED: 3/28/06

TIME SERVED: 1:25pm

Detainee placed on Administrative Detention pending Disciplinary Hearing: ☒Yes ☐No

Current Housing Assignment: F-4

**PART II. INFORMAL SANCTIONS**

☐ **8 HOURS EXTRA DUTY**     ☐ **24 HOUR LOCKDOWN** FROM: ___ TO: ___     ☐ **48 HOUR LOCKDOWN** FROM: ___ TO: ___

DETAINEE CHOOSES TO WAIVE HIS/HER RIGHT TO A DISCIPLINARY HEARING AND ACCEPTS A NON DISCIPLINE INFORMAL SANCTION. DETAINEE ACKNOWLEDGES THAT AN INFORMAL SANCTION DOES NOT BECOME PART OF THEIR PERMANENT RECORD AND THEREFORE IS NOT SUBJECT TO AN APPEAL.

Detainee Signature: ___ Date: ___ Supervisor Signature: ___ Date: ___

**PART III. DISCIPLINARY HEARING**

DETAINEE HAS BEEN INFORMED IN WRITING THAT THE DISCIPLINARY HEARING WILL BE HELD IN 24 HOURS BY:

SIGNATURE: ___ DATE & TIME: ___

DETAINEE CHOOSES TO WAIVE THE RIGHT TO A 24 HOUR HEARING NOTICE.

SIGNATURE: ___ DATE & TIME: ___

HEARING OFFICER/COMMITTEE MEMBER #1 NAME & TITLE: Lt. D. Sauro

COMMITTEE MEMBER #2 NAME & TITLE: ___

COMMITTEE MEMBER #3 NAME & TITLE: ___

IS THE DETAINEE PRESENT BEFORE THE HEARING COMMITTEE: ☒YES ☐NO (IF NOT PRESENT ATTACH WAIVER/REFUSAL TO APPEAR)

STAFF MEMBER WITNESSING REFUSAL: SIGNATURE: ___ PRINT: ___

DETAINEE WAS ADVISED OF HIS/HER RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE FACILITY'S DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

I HAVE BEEN ADVISED OF THE ABOVE RIGHTS: _(signature)_ ON DATE/TIME: 4-5-06

STAFF ASSISTANCE REQUESTED: ☐YES ☒NO STAFF NAME & TITLE IF REQUESTED: ___

WITNESS REQUESTED: ☐YES ☒NO WITNESS NAME(S): ___

DETAINEE'S PLEA:
CHARGE #1: A-6 ☒NOT GUILTY ☐GUILTY ☐GUILTY WITH EXPLANATION
CHARGE #2: B-1 ☒NOT GUILTY ☐GUILTY ☐GUILTY WITH EXPLANATION
CHARGE #3: D-06 ☒NOT GUILTY ☐GUILTY ☐GUILTY WITH EXPLANATION

DETAINEE SIGNATURE: X Nick Rheault

SUMMARY OF TESTIMONY: Detainee Rheault states that these charges are false and that he did not assault anyone and that he feels that he was assaulted.

HEARING OFFICER/ COMMITTEE CONCLUSION: Guilty, based on information provided through the investigation. This sanction will begin on 4.5.06, release date will be on 5.5.06.

CHARGE #1: A-6 ☐NOT GUILTY ☒GUILTY
15 DAYS DISCIPLINARY SEGREGATION
5 DAYS SUSPENDED FOR 3 MONTHS

CHARGE #2: B-1 ☐NOT GUILTY ☒GUILTY
10 DAYS DISCIPLINARY SEGREGATION
5 DAYS SUSPENDED FOR 3 MONTHS

CHARGE #3: D-6 ☐NOT GUILTY ☒GUILTY
0 DAYS DISCIPLINARY SEGREGATION
5 DAYS SUSPENDED FOR 3 MONTHS

I HAVE BEEN ADVISED OF THE FINDINGS OF THE DISCIPLINARY HEARING AND THAT I HAVE THE RIGHT TO APPEAL THESE FINDINGS IN WRITING TO THE WARDEN WITHIN A PERIOD OF FIVE DAYS.

DETAINEE SIGNATURE: _Nick Rheault_

DATE & TIME: 4.5.06 8:45am

May 30 2006 03:36pm    Fax 4017291947    WYATT DETENTION    P006/014

4.5.06 8:45am

## DONALD W. WYATT DETENTION FACILITY
### DISCIPLINARY REPORT

Report No. 6

**PART I. REPORT**

| DETAINEE NAME: | BOOKING NUMBER: | DATE & TIME OF INCIDENT: | PLACE OF INCIDENT: |
|---|---|---|---|
| Rheault, Nicholas | 8047B-038 | 3.17.06 10:40pm | B20 |

| DETAINEE HOUSING UNIT: | DISCIPLINARY OFFENSE(S) CHARGED: | OFFENSE CODE(S): |
|---|---|---|
| F4 | Threats to another person / Conduct which disrupts / Refusing An order | B1, C6, C8 |

**SUMMARY OF INCIDENT:**
On 3/17/06 at approximately 10:40pm Detainee Rheault, N was given a direct order to remain housed in cell B20 with another detainee. Detainee Rheault did not comply with order stating "I ain't fucking living with no one" "I will fuck up who ever you put in here with him. Detainee Rheault became agitated and verbally aggressive. I gave the order again and detainee Rheault did not comply stating "Bring him in here I will catch another charge cause. I am gonna fuck him up". Subsequently Detainee Rheault was restrained and escorted to segregation and secured in FB Detainee Rheault's actions caused facility clean up to come to a hault. as well as they prevented my self from performing my daily tasks as a Sergeant.

| SIGNATURE OF ISSUING EMPLOYEE: | REPORT FILED DATE & TIME: | EMPLOYEE NAME AND TITLE PRINTED: |
|---|---|---|
| | 3.18.06  10:15pm | Sgt S Gomes |

| REPORT SERVED TO DETAINEE BY: | | DAYS SERVED: | TIME SERVED: |
|---|---|---|---|
| | | 3.18.06 | 10:20pm |

Detainee placed on Administrative Detention pending Disciplinary Hearing.  ☐ Yes  ☐ No | Current Housing Assignment: F-4

**PART II. INFORMAL SANCTIONS**

☐ 8 HOURS EXTRA DUTY    ☐ 24 HOUR LOCKDOWN  FROM:____ TO:____    ☐ 48 HOUR LOCKDOWN  FROM:____ TO:____

DETAINEE CHOOSES TO WAIVE HIS/HER RIGHT TO A DISCIPLINARY HEARING AND ACCEPTS A NON DISCIPLINE INFORMAL SANCTION. DETAINEE ACKNOWLEDGES THAT AN INFORMAL SANCTION DOES NOT BECOME PART OF THEIR PERMANENT RECORD AND THEREFORE IS NOT SUBJECT TO AN APPEAL.

| Detainee Signature: | Date: | Supervisor Signature: | Date: |
|---|---|---|---|
| | | | |

**PART III. DISCIPLINARY HEARING**

| DETAINEE HAS BEEN INFORMED IN WRITING THAT THE DISCIPLINARY HEARING WILL BE HELD IN 24 HOURS BY: | DETAINEE CHOOSES TO WAIVE THE RIGHT TO A 24 HOUR HEARING NOTICE: |
|---|---|
| SIGNATURE: | DATE & TIME: 3.18.06 10:20pm | SIGNATURE: | DATE & TIME: |

| HEARING OFFICER/COMMITTEE MEMBER #1 NAME & TITLE: | COMMITTEE MEMBER #2 NAME & TITLE: | COMMITTEE MEMBER #3 NAME & TITLE: |
|---|---|---|
| Captain Calana | Officer J. Melo | |

IS THE DETAINEE PRESENT BEFORE THE HEARING COMMITTEE: ☒YES ☐NO (IF NOT PRESENT ATTACH WAIVER/REFUSAL TO APPEAR)

STAFF MEMBER WITNESSING REFUSAL:_____ SIGNATURE:_____ PRINT:_____

DETAINEE WAS ADVISED OF HIS/HER RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE FACILITY'S DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

I HAVE BEEN ADVISED OF THE ABOVE RIGHTS: _Nick Rheault_ ON DATE/TIME: 7/25/06 6:15pm

STAFF ASSISTANCE REQUESTED: ☐ YES ☒ NO  STAFF NAME & TITLE IF REQUESTED:_____

WITNESS REQUESTED:  ☐ YES ☒ NO  WITNESS NAME(S):_____

| | CHARGE #1: B-1 ☒NOT GUILTY ☐GUILTY ☐GUILTY WITH EXPLANATION | DETAINEE |
|---|---|---|
| DETAINEE'S PLEA: | CHARGE #2: C-6 ☐NOT GUILTY ☒GUILTY ☐GUILTY WITH EXPLANATION | SIGNATURE: Nick Rheault |
| | CHARGE #3: C-8 ☐NOT GUILTY ☒GUILTY ☐GUILTY WITH EXPLANATION | |

**SUMMARY OF TESTIMONY:** Detainee Rheault did not threaten any one person individual his comments were general remarks. He admits he refused orders and disrupted operations. He says he was not ready to be housed with another person because of what happened that day.

**HEARING OFFICER COMMITTEE CONCLUSION:** Threats charge dismissed / Conduct which disrupts and refusing orders will be guilty with suspended time. 20 days suspended until June 25 2006.

| CHARGE #1: B-1 ☒NOT GUILTY ☐GUILTY | CHARGE #2: C-6 ☐NOT GUILTY ☐GUILTY | CHARGE #3: C-8 ☐NOT GUILTY ☐GUILTY |
|---|---|---|
| ____ DAYS DISCIPLINARY SEGREGATION | ____ DAYS DISCIPLINARY SEGREGATION | ____ DAYS DISCIPLINARY SEGREGATION |
| ____ DAYS SUSPENDED FOR ____ MONTHS | 10 DAYS SUSPENDED FOR 3 MONTHS | 10 DAYS SUSPENDED FOR 3 MONTHS |

I HAVE BEEN ADVISED OF THE FINDINGS OF THE DISCIPLINARY HEARING AND THAT I HAVE THE RIGHT TO APPEAL THESE FINDINGS IN WRITING TO THE WARDEN WITHIN A PERIOD OF FIVE DAYS.

| DETAINEE SIGNATURE: Nick Rheault | | DATE & TIME: |
|---|---|---|
| | | 3/25/06 6:30pm |

# ADMINISTRATIVE DETENTION ORDER

**To:  Wayne T. Salisbury Jr., Warden**

**From:  Christopher Coburn, Captain**

| Subject: | Rheault, Nicholas | 80478-038 | 06-20-2005 | 2:00PM |
|---|---|---|---|---|
| | Inmate Name | I.D.# | Date | Time |

## L. The above inmate:

| | | |
|---|---|---|
| _____ | (a) | Is pending a hearing for violation of facility regulations; |
| XX | (b) | Is pending investigation of a violation of facility regulations |
| _____ | (c) | Is pending investigation or trial for a criminal act; |
| XX | (d) | Is to be admitted to Administrative Detention; |
| _____ | (e) | Is to be admitted to Disciplinary Segregation; |

## II.

_____ (a) I hereby request placement in Administrative Detention for my own Protection.
Inmate Signature: _____

_____ (b) Since a serious threat exists to individual's safety as perceived by staff,. Although
person has not requested admission; referral of the necessary   information will be
forwarded to the Classification Counselor for appropriate hearing.

_____ I Is pending transfer or is in holdover status during transfer;

_____ (d) Is Pending Classification: or

_____ (e) Is terminating confinement in Disciplinary Segregation and has been ordered in to
Administrative Detention by the appropriate staff member.

It is this Officer's decision based on all circumstances that the above named inmate's
continued presence in the general population poses a serious threat to life, property, self,
other inmates, security or orderly running of the facility because:
**Detainee was spreading sensitive information about his codefendant.  The information put the life
of his codefendant in danger.  Investigation into whether his intent was malicious in any way.**

- In the case of Disciplinary Hearing Officer action, reference to that is
  sufficient. In other cases, the officer will make an independent review and
  decision which is documented.
- A memorandum detailing the reasons for the placement may be attached in
  lieu of describing the specific incident in this section.

I agree with the need for placement in Administrative Detention / Disciplinary
Segregation and hereby approve the above named inmate's placement in such status.

| Printed Name of | | Signature of | |
|---|---|---|---|
| Shift Commander: | **Christopher Coburn, Captain** | Shift Commander: | _Captain Coburn_ |
| Date: | **06-20-2005** | Time: | **2:00PM** |

Original: Records Dept
Co: Warden
   Associate Warden
   Major
   Programs Administrator

## ADMINISTRATIVE DETENTION ORDER

**To:** **Wayne T. Salisbury Jr, Warden**

**From:** **J. Afonso, Sergeant**

| **Subject:** | **Rheault, Nicholas** | **80478-038** | **08/10/2005** | **2:15PM** |
|---|---|---|---|---|
| | Inmate Name | I.D.# | Date | Time |

### I. The above inmate:

**XX** (a)   Is pending a hearing for violation of facility regulations;

_____ (b)   Is pending investigation of a violation of facility regulations

_____ (c)   Is pending investigation or trial for a criminal act;

**XX** (d)   Is to be admitted to Administrative Detention;

_____ (e)   Is to be admitted to Disciplinary Segregation;

_____

_____

### II.

_____ (a)   I hereby request placement in Administrative Detention for my own Protection.
       Inmate Signature: _____

_____ (b)   Since a serious threat exists to individual's safety as perceived by staff,. Although
       person has not requested admission; referral of the necessary information will be
       forwarded to the Classification Counselor for appropriate hearing.

_____ I    Is pending transfer or is in holdover status during transfer;

_____ (d)   Is Pending Classification: or

_____ (e)   Is terminating confinement in Disciplinary Segregation and has been ordered in to
       Administrative Detention by the appropriate staff member.

It is this Officer's decision based on all circumstances that the above named inmate's
continued presence in the general population poses a serious threat to life, property, self,
other inmates, security or orderly running of the facility because:

**Refusing a housing assignment**

_____

- In the case of Disciplinary Hearing Officer action, reference to that is
  sufficient. In other cases, the officer will make an independent review and
  decision which is documented.
- A memorandum detailing the reasons for the placement may be attached in
  lieu of describing the specific incident in this section.

I agree with the need for placement in Administrative Detention / Disciplinary
Segregation and hereby approve the above named inmate's placement in such status.

| Printed Name of | | Signature of | |
|---|---|---|---|
| Shift Commander: | **Capt. Robert Reis** | Shift Commander: | |
| Date: | **08/10/2005** | Time: | **2:15PM** |

Original: Records Dept
Cc: Warden
    Associate Warden
    Major
    Programs Administrator

# ADMINISTRATIVE DETENTION ORDER

**To: Wayne T. Salisbury Jr., Warden**

**From: Christopher Coburn, Captain**

| Subject: | **Rheault, Nicholas** | **80478-038** | **07-29-2005** | **9:00PM** |
|---|---|---|---|---|
| | Inmate Name | I.D.# | Date | Time |

**I. The above inmate:**

| **XX** | (a) | Is pending a hearing for violation of facility regulations; |
|---|---|---|
| _____ | (b) | Is pending investigation of a violation of facility regulations |
| _____ | (c) | Is pending investigation or trial for a criminal act; |
| **XX** | (d) | Is to be admitted to Administrative Detention; |
| _____ | (e) | Is to be admitted to Disciplinary Segregation; |
| | | Conduct which disrupts and refusing an order. |

_____

**II.**

| _____ | (a) | I hereby request placement in Administrative Detention for my own Protection. |
|---|---|---|
| | | Inmate Signature: |
| _____ | (b) | Since a serious threat exists to individual's safety as perceived by staff,. Although person has not requested admission; referral of the necessary information will be forwarded to the Classification Counselor for appropriate hearing. |
| _____ | I | Is pending transfer or is in holdover status during transfer; |
| _____ | (d) | Is Pending Classification: or |
| _____ | (e) | Is terminating confinement in Disciplinary Segregation and has been ordered in to Administrative Detention by the appropriate staff member. |

It is this Officer's decision based on all circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, other inmates, security or orderly running of the facility because:

_____

_____

_____

_____

- In the case of Disciplinary Hearing Officer action, reference to that is sufficient. In other cases, the officer will make an independent review and decision which is documented.
- A memorandum detailing the reasons for the placement may be attached in lieu of describing the specific incident in this section.

I agree with the need for placement in Administrative Detention / Disciplinary Segregation and hereby approve the above named inmate's placement in such status.

| Printed Name of Shift Commander: | **Christopher Coburn, Captain** | Signature of Shift Commander: | _(signature)_ |
|---|---|---|---|
| Date: | **07-29-2005** | Time: | **9:00PM** |

Original: Records Dept
Cc: Warden
   Associate Warden
   Major
   Programs Administrator

# ADMINISTRATIVE DETENTION ORDER

**To:  Warden Wayne. T. Salisbury Jr.**

**From:  Captain D. Mougenot**

| **Subject:** | **Rheault, Nicholas** | **80478-038** | **05-19-2006** | **00:10 hrs** |
|---|---|---|---|---|
| | Inmate Name | I.D.# | Date | Time |

**I.  The above inmate:**

☑ (a)  Is pending a hearing for violation of facility regulations;

____ (b)  Is pending investigation of a violation of facility regulations

____ (c)  Is pending investigation or trial for a criminal act;

☑ (d)  Is to admitted to Administrative Detention;

____ (e)  Is to be admitted to Disciplinary Segregation;

Explanation:  **Housed on Administrative Detention pending hearing for smoking in his cell.**

_____

_____

**II.**

____ (a)  I hereby request placement in Administrative Detention for my own Protection.
Inmate Signature: _____

____ (b)  Since a serious threat exists to individual's safety as perceived by staff,. although person has not requested admission; referral of the necessary    information will be forwarded to the Classification Counselor for appropriate hearing.

____ (c)  Is pending transfer or is in holdover status during transfer;

____ (d)  Is Pending Classification: or

____ (e)  Is terminating confinement in Disciplinary Segregation and has been ordered in to Administrative Detention by the appropriate staff member.

It is this Officer's decision based on all circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, other inmates, security or orderly running of the facility because:

_____

_____

_____

- In the case of Disciplinary Hearing Officer action, reference to that is sufficient. In other cases, the officer will make an independent review and decision which is documented.
- A memorandum detailing the reasons for the placement may be attached in lieu of describing the specific incident in this section.

I agree with the need for placement in Administrative Detention / Disciplinary Segregation and hereby approve the above named inmate's placement in such status.

Printed Name of                         Signature of
Shift Commander:  **Captain D. Mougenot**     Shift Commander: _____

Date:  **May 19, 2006**          Time:  **00:10 hours**

Original:  Records Dept
Cc: Warden
    Associate Warden
    Major
    Programs Administrator

# ADMINISTRATIVE DETENTION ORDER

**To:  Warden Wayne. T. Salisbury Jr.**

**From:  Steven M. Gomes, Sergeant**

| Subject: | Rheault, Nicholas | 80478-038 | 03/08/06 | 9:00pm |
|---|---|---|---|---|
| | Inmate Name | I.D.# | Date | Time |

## I. The above inmate:

_____ (a)  Is pending a hearing for violation of facility regulations;

_____ (b)  Is pending investigation of a violation of facility regulations

_____ (c)  Is pending investigation or trial for a criminal act;

**XX** (d)  Is to admitted to Administrative Detention;

_____ (e)  Is to be admitted to Disciplinary Segregation;

Explanation:  **Placed in Administrative Detention 48 hour Lockdown for rules violations**

_____

## II.

_____ (a)  I hereby request placement in Administrative Detention for my own Protection.
Inmate Signature: _____

_____ (b)  Since a serious threat exists to individual's safety as perceived by staff,. although person has not requested admission; referral of the necessary   information will be forwarded to the Classification Counselor for appropriate hearing.

_____ (c)  Is pending transfer or is in holdover status during transfer;

_____ (d)  Is Pending Classification: or

_____ (e)  Is terminating confinement in Disciplinary Segregation and has been ordered in to Administrative Detention by the appropriate staff member.

It is this Officer's decision based on all circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, other inmates, security or orderly running of the facility because:

_____

- In the case of Disciplinary Hearing Officer action, reference to that is sufficient. In other cases, the officer will make an independent review and decision which is documented.
- A memorandum detailing the reasons for the placement may be attached in lieu of describing the specific incident in this section.

I agree with the need for placement in Administrative Detention / Disciplinary Segregation and hereby approve the above named inmate's placement in such status.

| Printed Name of | Signature of |
|---|---|
| Shift Commander:  Captain B. Farrimond | Shift Commander: |
| Date:  03/08/2006 | Time:  10:00pm |

Original: Records Dept
Cc: Warden
   Associate Warden
   Major
   Programs Administrator

# ADMINISTRATIVE DETENTION ORDER

**To:  Warden Wayne. T. Salisbury Jr.**

**From:  Capt. B. Farrimond**

| **Subject:** | **Rheault, Nicholas** | **80478-038** | **03-17-06** | **0240hrs.** |
|---|---|---|---|---|
| | Inmate Name | I.D.# | Date | Time |

**I.  The above inmate:**

| | (a) | Is pending a hearing for violation of facility regulations; |
|---|---|---|
| | (b) | Is pending investigation of a violation of facility regulations |
| | (c) | Is pending investigation or trial for a criminal act; |
| **XX** | (d) | Is to admitted to Administrative Detention; |
| | (e) | Is to be admitted to Disciplinary Segregation; |

Explanation:  **24 hour informal lock down for interfering with count.**

_____

_____

**II.**

| | (a) | I hereby request placement in Administrative Detention for my own Protection. Inmate Signature: |
|---|---|---|
| | (b) | Since a serious threat exists to individual's safety as perceived by staff,. although person has not requested admission; referral of the necessary   information will be forwarded to the Classification Counselor for appropriate hearing. |
| | (c) | Is pending transfer or is in holdover status during transfer; |
| | (d) | Is Pending Classification: or |
| | (e) | Is terminating confinement in Disciplinary Segregation and has been ordered in to Administrative Detention by the appropriate staff member. |

It is this Officer's decision based on all circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, other inmates, security or orderly running of the facility because:

_____

_____

_____

_____

- In the case of Disciplinary Hearing Officer action, reference to that is sufficient. In other cases, the officer will make an independent review and decision which is documented.
- A memorandum detailing the reasons for the placement may be attached in lieu of describing the specific incident in this section.

I agree with the need for placement in Administrative Detention / Disciplinary Segregation and hereby approve the above named inmate's placement in such status.

| Printed Name of | | Signature of | |
|---|---|---|---|
| Shift Commander: | Capt. B. Farrimond | Shift Commander: | |
| Date: | 03-17-06 | Time: | 0240 hours |

Original: Records Dept
Cc: Warden
   Associate Warden
   Major
   Programs Administrator